May 11, 2007

TO ALL INTERESTED PARTIES:

      Re:    Congoleum Corporation, et al
             Case No. 03-51524

             Motion for Order Authorizing and Approving Settlement and Policy Buyback Agreement and Release among the Congoleum Entities, the Plan Trust, the ABI Entities and the St. Paul Travelers Entities and Sale of Subject Policies
             Document #4014

Counselors:

On April 12, 2007, the Court took oral argument on the Debtors' Motion for Order Authorizing and Approving Settlement and Policy Buyback Agreement and Release among the Congoleum Entities, the Plan Trust, the ABI Entities, and the St. Paul Travelers Entities and Sale of Subject Policies. At the conclusion of argument, the Court reserved decision. This letter opinion represents the Court's decision on the merits of the motion.

At issue are 18 policies issued by Travelers Casualty and Surety Certificate of Occupancy. and St. Paul Fire and Marine Insurance Certificate of Occupancy ("collectively Travelers"), all at or above the third excess layer above primary insurance. In the broadest possible terms, the

settlement agreement provides for Travelers to pay the Debtors $25 million in two installments, in return for a resolution of the outstanding issues between the parties in the state court coverage action as well as the bankruptcy. To approve the settlement the Court must find that it meets the standards under Rule 9019 as well as § 363. The Future Claims Representative ("FCR") vociferously objects to the proposed settlement.

The proposed settlement involves the sale of the subject policies. Therefore, the Debtor must demonstrate that all elements required by 11 U.S.C. § 363 are satisfied. Section 363(b) permits a debtor to sell property outside of the ordinary course of business after notice and a hearing. The subject insurance policies are undeniably property of the estate that may be sold pursuant to § 363(b). *See*, First Fidelity Bank v. McAteer, 985 F.2d 114 (3d Cir. 1993). The Court also finds that notice of this motion was adequate, as it was served on, among others, the Claimants' Representative; the United States Trustee; the FCR and his counsel; the members of the Official Asbestos Creditors' Committee ("ACC") and their counsel; parties who have filed a notice of appearance in the case; the Collateral Trustee; counsel to all known holders of asbestos claims; and the members of the Bondholders Committee and their counsel.

The proposed sale implicates two subsections of § 363. First, because this settlement envisions the sale as free and clear of liens, § 363(f) must be satisfied. Courts have interpreted the requirements of Section 363(f) to be disjunctive. In Re Elliot, 94 B.R. 343 (Bankr. E.D. Pa.1988). Accordingly, if any of the five conditions set forth in § 363(f) are met, then a debtor is empowered to sell property free and clear of liens. In its motion, the Debtors contend that subsections 1, 2 and/or 5 are satisfied. Debtors also state that they are aware of only one lien asserted against the proceeds of the subject policies: the lien granted in favor of the Collateral Trustee. Section 363(f)(2)

provides that a sale free and clear of a lien may occur if the entity asserting the lien consents. As previously noted, the Collateral Trustee has been served with this motion and has not objected. Courts have found that the failure to object to a notice of sale free and clear is deemed consent to the sale for purposes of § 363(f)(2). In re Tabone. Inc., 175 B.R. 855 (Bankr. D.N.J. 1994).[1]. Accordingly, the Court finds that the proposed settlement satisfied the requirements of § 363(f)(2).

The settlement must also satisfy § 363(b). Because bankruptcy sales pursuant to § 363(b) are conducted outside of the normal Chapter 11 plan process, they must be evaluated under the business judgment standard. It is the debtor's burden to establish the sound business reasons for the terms of the proposed sale. In re Castre, Inc., 312 B.R. 426, 428 (Bankr. D. Colo. 2004). Although there are many factors to be considered, the "sound business purpose" test has four basic requirements: (1) sound business reason; (2) accurate and reasonable notice; (3) adequate price (fair and reasonable); and (4) good faith. In re Titusville Country Club, 128 B.R. 396 (W.D. Pa. 1991).

The "good faith" requirement, although not expressly contained in § 363(b), has been grafted on to the approval of sales in this Circuit because that requirement appears in § 363(m) governing appeals, and because of the Third Circuit's decision in In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143 (3d Cir. 1986). The Abbotts Dairies court held that when a bankruptcy court authorizes a sale of assets pursuant to § 363(b)(1), it is required to make a finding with respect to the good faith of the purchaser. Although neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define "good faith," courts applying § 363(m) have held that the phrase encompasses one who purchases in "good faith" and for "value." Abbotts Dairies, 788

---

[1] Although the FCR objects to the settlement, he does not do so on the basis of a lien asserted in the subject policies. The FCR has also supported past settlements, such as that with Century, that involved this type of buy-back arrangement.

3

F.2d at 147 . The concept of "good faith" speaks to the integrity of a party's conduct in the course of the bankruptcy sale proceedings rather than any emergent need for the sale. Abbotts Dairies, 788 F.2d at 147.

Two of the four "sound business purpose" requirements are at the heart of the FCR's objection: adequate price and good faith. The Court will first address the good faith issue. On the basis of the FCR's earlier assertions that this settlement was the result of collusion, the Court allowed the parties to conduct discovery. As a result, the FCR has had access to information regarding this settlement that is unprecedented for the previous settlements presented to the Court for approval. Notwithstanding that access, at this point the Court has been presented with nothing more than circumstantial evidence of bad faith or a *quid pro quo*. In support of his collusion theory, the FCR points to the fact that the same negotiators are involved in this settlement and the ACandS bankruptcy. Unfortunately, that situation is emblematic of the insular world of asbestos bankruptcies. The opportunity for back-scratching in these cases reinforces the pressing need for Congress to provide a global solution to the asbestos problem. Courts can only truly address these problems on a macro level, that is, based on the facts in evidence placed before them.

That being said, the fact that the same professionals are negotiating in other cases standing alone, or even in conjunction with other coincidences in this case, is not sufficient evidence of collusion. There are other legal areas, bankruptcy among them, in which the same attorneys often find themselves as sometime adversaries/sometime allies, often in separate cases simultaneously. The circumstantial evidence that the FCR advances, including that GHR negotiated the basic terms of this deal, that the ACC supports it, and that the FCR was not at the negotiating table, even taken collectively fall short of establishing by a preponderance of the evidence that the proposed

settlement is an improper product of collusion. In order to find bad faith, the Court needs to rely on more than the settlement failing the "smell test". An objector has to show more than an opportunity to collude; an objector must provide some evidence or indication of actual collusion.

That brings the Court to whether the proposed sale is for an adequate price. An analysis of this factor necessarily implicates the standards for approving a settlement. The Third Circuit has identified four criteria that should be used in evaluating a settlement: 1) the probability of success in the litigation; 2) any difficulties to be encountered in collection; 3) the complexity of the litigation and the expenses, inconvenience and delay necessarily attending it; and 4) the paramount interests of creditors. In re RFE Industries, Inc., 283 F.3d 159 (3d Cir. 2002)(citing In re Martin, 91 F.3d 389 (3d Cir. 1996)). In examining a settlement, the court's role is limited. The "responsibility of the bankruptcy judge ... is not to decide the numerous questions of law and fact, but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." In re WT Grant Certificate of Occupancy., 699 F.2d 599, 608 (2d Cir. 1983); *see also*, Matter of Jasmine, Ltd., 258 B.R. 119 (D.N.J. 2000).

This proposed settlement is not like a traditional settlement in that it does not finally resolve any litigation. It is a partial settlement that simply takes Travelers out of the coverage litigation and makes them a settling insurer in the bankruptcy. The Debtors will still have to contend with the coverage litigation in the state court. That makes the first and third settlement criteria inapplicable to this analysis. The second criterion is also a non-issue because no one is suggesting that Travelers is not a solvent insurance company with the assets necessary to pay the settlement amount. That leaves the final criterion - whether the settlement is in the paramount interests of creditors.

On that issue the FCR makes a telling point: that this settlement is not actively supported by any creditor constituency. As already noted, the FCR vehemently opposes it. Counsel for the ACC clarified at oral argument that while the ACC had decided not to oppose the settlement, it certainly does not support it enthusiastically. Moreover, the ACC has indicated that if the Debtors present future settlements that allow such a deep discount the ACC will object to them. The Bondholders Committee stated that it did not take a position for or against the settlement, but was generally in agreement with the statements made by the ACC's counsel. So, from the creditor perspective the response to the proposed settlement ranges from staunch opposition to grudging non-opposition.

The lack of active creditor support for this settlement is of paramount importance because of the unique position of these Debtors *vis a vis* the insurance proceeds. All of the Debtors' past plans of reorganization have been premised on the availability of insurance proceeds to be transferred to a trust for the benefit of asbestos creditors. As a result, the Debtors have no direct pecuniary interest in the amount of the insurance settlements. They do, of course, have an indirect interest to the extent that favorable insurance settlements advance the Debtors ability to present a confirmable plan. The FCR convincingly argues that the true beneficiaries of the insurance, such as the future asbestos claimants, should be the ones who decide how to deal with the insurance companies. The ACC echoed that sentiment stating that the Debtors are not the real parties in interest when it comes to insurance proceeds.

An additional obstacle to approving this settlement is that no plan of reorganization is currently on file. As the FCR cogently argued, without the benefit of Trust Distribution Procedures it is impossible to know the volume and type of claims that will be paid. As a result, the Court and the parties are being asked to analyze this settlement in a vacuum. Although a court need not delve

into the minutia of a proposed settlement, it is required to determine if it falls below the lowest point in the range of reasonableness. <u>WT Grant</u> at 608. That task is problematic when the Court does not know what a future plan will bring. That fact combined with the lack of creditor support compels the Court to deny approval of this settlement. There are too many unanswered questions at this juncture to permit the Court to find that this settlement is reasonable and in the paramount interest of creditors.

The Motion will be denied with the standard order.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: May 11, 2007