October 22, 2008

TO ALL INTERESTED PARTIES:

          Re:    Congoleum Corporation, et al.
                  Case No. 03-51524
                  Document #6856

                  Congoleum Corporation vs.
                  Arthur J. Pergament, as the Collateral Trustee
                  of the Collateral Trust, et al.
                  Adversary No. 05-6245
                  Document #336

                  Joint Motion of the Debtors and the Official Committee of Bondholders for an Order Pursuant to 11 U.S.C. Section 105 and Fed.R.Bankr.P. 9019 Approving Settlement

Counselors:

      On October 20, 2008, the Court took oral argument on a joint motion brought by the Debtors and the Official Committee of Bondholders for approval of a settlement of two adversary proceedings referenced as Pergament I and Pergament II ("litigation settlement"). Objections to the litigation settlement had been filed by Plainfield Asset Management, LLC, the holder of more than 33% of the outstanding principal amount of the Senior Notes; Travelers' Insurance; and First State Insurance. A contingent objection was filed by certain asbestos claimants who allege not to be parties to the Pergament adversaries. The Movants filed a reply to these objections.

At oral argument, the Court and several other parties expressed concerns about the utility of approving this settlement if certain elements may ultimately not satisfy the higher standards of § 1129. The Movants, supported by the Official Asbestos Creditors Committee and the Future Claims Representative, insisted that approval of the settlement under the Rule 9019 standards, even without a finding on any confirmation issues, would move the parties further along the path of proposing a confirmable plan.

With that in mind, the Court turns to the standards for approval of a settlement. Approval of a settlement pursuant to Bankruptcy Rule 9019 is committed to the discretion of the court. Key3Media Group, Inc. v. Pulver.com, Inc. ( In re Key3Media Group, Inc.), 336 B.R. 87, 92 (Bankr. D. Del. 2005). In evaluating a settlement, the court must assess whether it is fair and equitable, but need not be convinced that the settlement is the best possible compromise. In re Coram Healthcare Corp., 315 B.R. 321, 330 (Bankr. D. Del. 2004). The court need only conclude that the settlement "falls within the reasonable range of litigation possibilities" somewhere "above the lowest point in the range of reasonableness." In re Coram, 315 B.R. at 330 (internal citations omitted). The Third Circuit Court of Appeals has recently reiterated that the four factors a court should consider in evaluating a settlement are: (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (4) the paramount interest of creditors. In re Nutraquest, Inc., 434 F.3d 639 (3d Cir. 2006)(reaffirming the Martin factors).

As the foregoing standards indicate, when a court evaluates a settlement it does so globally. There may be certain aspects of a settlement that are objectionable when viewed in isolation, but if they are outweighed by favorable aspects of the settlement, then the overall agreement may still fall

above the lowest point in the range of reasonableness. As one court stated, "[a]lthough a judge must consider the fairness of the settlement to the estate and its creditors, the judge is not required to assess the minutia of each and every claim." Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).

If this Court views the litigation settlement before it globally, it is fairly easy to conclude that it falls above the lowest point in the range of reasonableness. The litigation settlement sets the stage for proposing a confirmable plan because it eliminates the disparity of treatment of similarly situated creditors that had been created through the pre-petition settlements and the Claimant Agreement. Attempting to honor those pre-petition agreements in one form or another had proven to be a significant stumbling block to confirmation of previous plans. The docket of these adversary proceedings and this Court's previous rulings amply demonstrate that this litigation is complex and that the probability of success is uncertain. Because the Debtor has been toiling in Chapter 11 for nearly 5 years and faces a court-imposed deadline for confirming a plan, any reasonable settlement that advances confirmation is in the best interest of creditors. Therefore, when looking at the entirety of the settlement, the Court can find that it satisfies the Martin factors.

To clarify the record, however, the Court must note that approval of this settlement does not include a finding that any piece of the settlement meets the standards required for confirmation. For example, the litigation settlement provides that Joseph Rice and his firm and Perry Weitz and his firm will be allowed to keep the $1 million payments made to them pre-petition in connection with negotiation of the Claimant Agreement and pre-packaged bankruptcy plan. *See,* Motion ¶ 45; Ex. A at 7. The Movants argue that this settlement is consistent with the Court's prior rulings because any **additional** fees and expenses sought will require application to, and approval by, the bankruptcy

3

court. The Movants also contend that § 1129(a)(4) is not the correct standard to review these payments. The persuasive force that argument is not apparent. Section 1129(a)(4) does not limit a bankruptcy court's review of fees paid by a debtor to future payments, or even post petition payments: By its plain language it includes any payments made "in connection with the case, or in connection with the plan and incident to the case". *See*, In re Cajun Elec. Power Co-op, Inc., 150 F.3d 503 (5th Cir. 1998); Collier on Bankruptcy ¶ 1129.03[4] (15th ed. rev.)  Although the court has not yet been presented with support for how these fees accrued, the parties have consistently represented that they are based on services rendered in negotiating the plan initially put forth by the Debtors in this case. Therefore, those payments would still be subject to court review at confirmation.

The Movants cite In re Western Asbestos, 313 B.R. 859 (N.D. Cal. 2004) for the proposition that the bankruptcy court has no authority to review prepetition fees, but that case is readily distinguishable. In Western Asbestos, the bankruptcy judge reviewed a $12.3 million dollar pre-petition payment that had been made by the debtor's insurer to claimants' counsel under § 1129(a)(4) and found that it was not reasonable. On appeal, the District Court found that the bankruptcy court did not have core jurisdiction over the fees that were paid because the payment "at its most basic level, had little to do with the Debtor's bankruptcy ...." Id. at 863. In contrast, the payments proposed in this case are to come directly from the Debtors rather than from a third-party and the work that is allegedly being compensated for is closely tied to the bankruptcy filing. In this very case, the Third Circuit Court of Appeals admonished this court for refusing to scrutinize pre petition negotiations where those negotiations were related to the Bankruptcy filing. In re Congoleum Corp., 426 F.3d 675 (3d Cir. 2005). It seems unlikely that the Third Circuit would take

a different view of the relevance of pre petition negotiations in this case in the context of 1129(a)(4).

In addition, the litigation settlement contains broad mutual releases between the parties. This Court has already ruled in relation to the Omnibus Settlement Agreement that was part of the Joint Plan that Rule 9019 and the Martin factors are not the relevant standard for evaluating whether releases are permissible. *June 5, 2008 Opinion* at 17. In its prior opinion, this Court noted that the plan proponents had not fully addressed the jurisdictional hurdle posed by In re Continental Airlines, 203 F.3d 203, 214 n. 12 (3d Cir. 2000). That jurisdictional problem remains, and the Court's approval of this settlement should not be seen as a ruling on that issue.

Nor should it be seen as a ruling on whether the proposed releases are fair, necessary, or given in exchange for fair consideration. *See*, United Artists Theatre Co. v. Walton, 315 F.3d 217 (3d Cir. 2003).

These issues are examples of some, but not all, of the issues the court is **not** deciding on this motion. The Court will approve the settlement as presented, but language must be added to the order to clarify that the Court's approval is not dispositive of, and indeed has no bearing on, any issues in the Coverage Action, the overarching Global Settlement, or confirmation of the Plan contemplated by the settlements. Movants should submit a new form of order to that effect.

                                             */s/ Kathryn C. Ferguson*
                                             KATHRYN C. FERGUSON
                                             US Bankruptcy Judge

Dated: October 22, 2008