FOR PUBLICATION

<table>
<tr><td colspan="2">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

In re:

Congoleum Corporation, *et al.*,

                Debtors.

</td><td>

Case No. 03-51524 (MBK)

Chapter 11

Hearing Date: November 18, 2021

Judge:  Michael B. Kaplan

</td></tr>
</table>

## MEMORANDUM OPINION

**Daniel M. Stolz, Esq.**
**Donald W. Clarke, Esq.**
Genova Burns
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
*Local Counsel for Bath Iron Works*
*Corporation*

**Wade A. Thomson, Esq.**
**Catherine Steege, Esq.**
**Michael A. Doornweerd, Esq.**
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
*Counsel for Bath Iron Works Corporation*

**Russell C. Silberglied, Esq.**
**Sarah E. Silveira, Esq.**
Richards, Layton & Finger, P.A.
One Rodney Street
920 North King Street
Wilmington, DE 19801
*Counsel for Occidental Chemical*
*Corporation*

**Larry D. Silver, Esq.**
**Amanda L. Rauer, Esq.**
Langsam Stevens Silver & Hollaender LLP
1818 Market Street, Suite 2430
Philadelphia, PA 19103
*Counsel for Occidental Chemical*
*Corporation*

      This matter comes before the Court on a motion  ("Motion") (ECF No. 8381) filed by Bath

Iron Works Corporation ("BIW") seeking to reopen the above-captioned chapter 11 case as well

as to enforce several orders against Occidental Chemical Corporation  ("Occidental").  Occidental

opposes the Motion in its entirety.  At the conclusion of the hearing held on November 18, 2021,

the Court permitted the parties to submit additional briefing to memorialize the arguments raised

during oral argument.  The Court has fully considered the submissions of the parties—including

post-hearing pleadings—and the arguments set forth on the record.  For the reasons set forth below,

the Court concludes that the order confirming the chapter 11 plan in this case (the "2010

Confirmation Order") is binding on Occidental, based on principles of res judicata and collateral

estoppel.  BIW's Motion is GRANTED IN PART.

## I.  Background

On December 31, 2003, Congoleum along with two affiliates, Congoleum Sales, Inc. and

Congoleum Fiscal, Inc., (collectively, "Congoleum" or the "Debtor") filed voluntary petitions for

relief in the United States Bankruptcy Court for the District of New Jersey under chapter 11 of the

Bankruptcy Code.   The cases were jointly administered and captioned *In re Congoleum

Corporation*, 03-51524 (KCF) (the "First Congoleum Bankruptcy"). Debtor listed Occidental on

Schedule F as a creditor holding an unsecured priority claim in the total amount of $679,909.  On

January 7, 2004, the bankruptcy court entered a critical vendor order (the "Critical Vendor Order")

and, shortly thereafter, Congoleum paid Occidental's claim in full.  Occidental never filed a proof

of claim.

During the First Congoleum Bankruptcy, Congoleum negotiated a settlement and buyback

agreement with many of its insurers, including Century Indemnity Co. of N.A. ("Century").  The

settlement and buyback agreement (the "Century Settlement") provided for a $16.5 million sale of

the excess insurance policies back to Century, free and clear and subject to a release of all past,

present and future claims under the policies, including claims of additional insureds such as BIW.

The policies subject to the sale included—among other things—coverage for asbestos and

environmental claims asserted against the Debtor.  On August 21, 2006, Congoleum filed a motion

("Century Sale Motion") seeking the bankruptcy court's approval of the sale.  The terms of the

sale were articulated in the Century Settlement and attached to the Century Sale Motion.  The

parties dispute whether Occidental was served with the Century Sale Motion.  In any event,

following a hearing on September 11, 2006, the bankruptcy court approved the sale by order dated

September 20, 2006 ("Century Sale Order").  However, the sale was not final.  Instead, the parties'

obligations under Century Sale Order were subject to certain conditions precedent, including a

requirement that certain findings from the Century Agreement be incorporated into any future

confirmation order. *See Settlement and Buyback Agreement* at 10, Section II "Conditions

Precedent," ECF No. 4439-2.

Following approval of the Century Settlement, Congoleum's bankruptcy case progressed,

albeit slowly and tortuously.  In August 2009, the district court withdrew the reference and

assumed authority over the proceedings in Case No. 09-cv-04371 (JAP).  On June 7, 2010, the

district court entered an order confirming the Debtor's Fourth Amended Joint Plan of

Reorganization ("Plan") (ECF No. 664 in Case No. 09-cv-04371) (the "2010 Confirmation

Order").  Paragraph 104 of the 2010 Confirmation Order (the "Finding of Fact" or the "Finding")

contained language stating that BIW has "no responsibility for any of the liabilities of the

Congoleum Flooring Business (as defined in the Century Sale Settlement)." *Id.*  The First

Congoleum Bankruptcy was closed on March 31, 2011.

The issue presently before the Court arises from environmental litigation involving the

Debtor, BIW, Occidental, and other parties.  Pertinently, on June 12, 2017, DVL, Inc. and DVL

Kearny Holdings (collectively, "DVL") commenced litigation in the District of New Jersey against the Debtor and BIW, captioned *DVL, Inc. & DVL Kearny Holdings, LLC v. Congoleum Corp. and Bath Iron Works Corp.*, Case No. 17-cv-04261 (KM-JBC) (the "DVL Lawsuit"). In the DVL Lawsuit—which has since been closed—DVL sought damages against the Debtor and others for over $19 million as a result of the need to remediate environmental contamination on property located in Kearny, New Jersey (the "Kearny Property") that was previously owned by the Debtor. In that proceeding, DVL asserted causes of action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9601 *et. seq.*, ("CERCLA") and the New Jersey Spill Compensation and Control Act (the "Spill Act"), as well as under New Jersey common law for public nuisance, negligence, strict liability/abnormally dangerous activity and unjust enrichment. Initially, DVL sued only the Debtor; however, the Debtor impleaded BIW as a third-party defendant on theories of successor liability, and DVL amended its complaint to include BIW as a direct defendant. In the DVL Lawsuit, BIW contended, among other arguments, that DVL's claims against BIW were barred by res judicata, because the 2010 Confirmation Order precludes liability against BIW.

Shortly after the DVL Lawsuit was filed, Occidental initiated proceedings against over 100 defendants, including BIW in a case captioned *Occidental Chemical Corp. v. 21st Century Fox America, et al.*, Case No. 18-cv-11273 (MCA-JAD) (the "Occidental Lawsuit"). In that action— which remains pending—Occidental seeks to recover costs that it alleges it has and will continue to incur as a result of the United States Environmental Protection Agency ("EPA") identification of Occidental as the primary responsible party for alleged migration of discharged contaminants

4

from various defendants' properties to a site referred to as the Lower Passaic River, requiring remediation of sediments in the river. Occidental seeks to apportion that liability among numerous parties for alleged environmental contamination. On September 24, 2019, BIW filed a third-party complaint in the Occidental Lawsuit against the Debtor. The Debtor's and BIW's successorship dispute arose just as it had in the DVL Lawsuit, with BIW and the Debtor eventually entering into a stipulation that "[r]esolution of the corporate successorship issues and claims between BIW and Congoleum in the underlying DVL Lawsuit will also resolve the corporate successorship issues and claims between BIW and Congoleum in [the Occidental Lawsuit]." ECF No. 936-1 in Case No. 18-cv-11273. The parties agreed to stay the proceedings between BIW and the Debtor in the Occidental Lawsuit pending the outcome of the DVL Lawsuit.

On July 13, 2020, Congoleum again filed for bankruptcy (the "Second Bankruptcy Proceeding") under Case No. 20-18488 (MBK). Shortly thereafter, on August 6, 2020, BIW filed an Adversary Complaint for Declaratory Judgment and Other Relief (Adv. Pro. No. 20-01439) (the "Adversary Proceeding") seeking a declaratory judgment from this Court with respect the meaning of the district court's Findings in Paragraph 104 of the 2010 Confirmation Order in the First Congoleum Bankruptcy. Specifically, by way of the Adversary Proceeding, BIW asked this Court to clarify that the district court's Finding in Paragraph 104—which states that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business"—means that BIW is not a successor to the Congoleum Flooring Business and is not responsible for any liabilities of the Congoleum Flooring Business, including any environmental liabilities. Ultimately, BIW filed a motion for summary judgment ("2021 Summary Judgment Motion"), which this Court granted

5

on April 13, 2021 ("2021 Summary Judgment Order). (ECF No. in Case No. 20-18488).[1] Specifically, this Court found that the Century Sale Order sold the policies free and clear, as well as subject to a release of all past, present and future claims—both asbestos and non-asbestos— including claims of additional insureds, such as BIW.  This Court additionally held that Paragraph 104 of the 2010 Confirmation Order further memorializes that BIW has no liability for any claims—asbestos and non-asbestos—stemming from the Congoleum Flooring Business.

In light of this Court's ruling in the Adversary Proceeding, DVL and BIW stipulated to dismissal, with prejudice, of all claims against BIW in the DVL Lawsuit.  On September 17, 2021, the district court entered orders dismissing with prejudice all claims against BIW and all parties' remaining claims, counterclaims, and cross-claims. (ECF No. 214 & 215 in Case No. 2:17-cv-04261-KM-JBC).  The DVL Lawsuit was voluntarily dismissed in its entirety with prejudice.

BIW contends that it notified Occidental of this Court's ruling in the Adversary Proceeding and expressed its position that the 2021 Summary Judgment Order barred the claims asserted in the Occidental Lawsuit.  Nevertheless, Occidental has proceeded with its claims against BIW and moved for summary judgment in the district court.  In response, BIW filed the instant Motion

---

[1] Initially, the parties reached a settlement and sought to consensually resolve the Adversary Proceeding by requiring that the Court issue extensive findings and conclusions of law.  On November 19, 2020, the Debtor filed a Motion to Approve Settlement (the "Settlement Motion") in the Bankruptcy Proceeding (ECF No. 483 in Case No. 20-18488). In an Opinion and Order entered on January 4, 2021 (ECF Nos. 619 & 620, respectively, in Case No. 20-18488), the Court declined to approve the settlement and declined to issue partial findings because to do risked issuance of an inappropriate advisory opinion. Although this Court found that the unique circumstances of this case presented a procedural and substantive roadblock to partial findings in response to a Settlement Motion in the main Bankruptcy Proceeding, the Court determined that it could, nevertheless, issue findings, if warranted, as part of a ruling on any dispositive motion brought before the Court in the pending Adversary Proceeding.  As a result, BIW filed a motion for summary judgment in the Adversary Proceeding which sought declaratory rulings that were far more limited in scope than what was requested by way of the Settlement Motion.  Accordingly, the Court established a briefing schedule, set the matter for a hearing on March 17, 2021.

before this Court[2], seeking to reopen the First Congoleum Bankruptcy and, among other things, to enforce orders therein—specifically, the Century Sale Order and the 2010 Confirmation Order.

## II. Parties' Positions

BIW asserts that cause exists under § 350(b) or § 105(a) of the Bankruptcy Code to reopen the First Congoleum Bankruptcy to enforce the 2010 Confirmation Order. BIW relies on the language of Paragraph 104 of the 2010 Confirmation Order, which states that BIW has "no responsibility for any of the liabilities of the Congoleum Flooring Business." BIW contends that the 2010 Confirmation Order is binding on Occidental and bars claims against BIW in the Occidental Lawsuit based on three legal principles. First, BIW cites to § 1141(a) of the Bankruptcy Code, which provides that a confirmed plan and its terms are enforceable against all creditors of a debtor. BIW further relies on principles of res judicata and collateral estoppel.

Occidental opposes the Motion in all respects and urges this Court not to reopen the case at all, submitting that there is no cause to reopen given the futility of BIW's position. As an initial matter, Occidental believes that the district court is better suited to address the issues raised in the Motion because the district court currently presides over the Occidental Lawsuit. Occidental points out that the bankruptcy case has been closed for over ten years and argues that relevant case law weighs against reopening. Occidental also asserts that this Court could not grant any meaningful relief even if the case were reopened and contends that BIW has not adequately explained how the proposed relief affects the bankruptcy estate. Occidental explains that this

---

[2] The Court notes that the case in which the Motion was filed, Case No. 03-51524, the First Congoleum Bankruptcy, was previously assigned to Judge Ferguson. However, upon docketing of the Motion, the case was transferred to Judge Kaplan based on his familiarity with the issues raised.

Court cannot grant BIW's request to "enforce" the Finding of Fact because that finding is not an order directing or restricting specific actions.    Thus, Occidental contends there is nothing to enforce.    Rather, Occidental posits that the Motion truly seeks a new injunction, which—pursuant to the Bankruptcy Rules—must be sought by way of an adversary proceeding.    Occidental also maintains that BIW's suggested reading of the 2010 Confirmation Order is violative of CERCLA and is inconsistent with Debtor's plan of reorganization (the "Plan").    The crux of Occidental's opposition, however, rests on principles of due process and the characterization of BIW's requested relief as a "third-party release."    The arguments presented by counsel for Occidental during the hearing and memorialized in the post-hearing submissions focus on the extent to which the Finding of Fact was disclosed in the Disclosure Statement and Century Sale Motion, on the notice—or lack thereof—provided to Occidental, and on Occidental's purported status as a non-creditor who cannot be bound by the Finding of Fact in Paragraph 104.

The Court is unpersuaded by Occidental's arguments.    For the reasons set forth below, the Court determines that Occidental was a creditor in the First Congoleum Bankruptcy and had adequate notice and opportunity to challenge the Finding at issue to satisfy due process. Accordingly, Occidental is bound by the bankruptcy court's orders and the findings incorporated therein.    The Court will GRANT the Motion to the extent it seeks a declaratory ruling that Paragraph 104 is binding on Occidental and bars recovery in the Occidental Lawsuit (including contribution or indemnification) from BIW for liabilities arising out of the Congoleum Flooring Business.[3]

---

[3] Occidental maintains that BIW's Motion seeks a new injunction, which Occidental asserts must be accomplished through an adversary proceeding.    Indeed, in its initial moving papers, BIW ask the Court, among other things, to

### III.   Analysis

#### A. Introduction

Many of the issues raised in this Motion are interrelated, which complicates organization

of this Opinion.   Accordingly, the Court will begin where it left off with the 2021 Summary

Judgment Order.   As stated in that Order and the accompanying Opinion ("2010 Summary

Judgment Opinion"), by entering into the Century Settlement, the Debtor agreed to sell insurance

policies back to Century in exchange for $16.5 million and assumption of all liability for all claims,

including those environmental claims stemming from the Kearny Property.   Notably, the Century

Settlement also contemplated the inclusion of an anti-suit injunction pursuant to § 105(a) in any

plan of reorganization. *Settlement and Buyback Agreement* 10, Section II (E), Case No. 03-51524

(KCF), ECF No. 4439-2.[4]   The injunction permanently enjoined all holders of claims not

channeled by the Channeling Injunction under § 524(g) from asserting claims against Century

arising under the policies sold. *Id*.   This anti-suit injunction provided insurers with the desired

---

issue an order directing Occidental to dismiss with prejudice the Occidental Lawsuit, and to enjoin Occidental "from taking any further legal action against BIW that would violate the Century Sale Order or the 2010 Confirmation Order." *BIW's Motion* 10-11, ¶4, ECF No. 8381-1.  To the extent BIW asks this Court to enjoin Occidental from doing anything or to direct Occidental to take a particular action, Bankruptcy Rule 7001(7) requires the filing of an adversary proceeding. *See* FED. R. BANKR. P. 7001(7) ("The following are adversary proceedings . . . (7) a proceeding to obtain an injunction . . . ."). However, to the extent the Motion requests the Court merely to interpret the meaning, scope and applicability of Paragraph 104—a request which does strike the Court as one for declaratory relief—an adversary proceeding is not required. Rule 7001(9) requires an adversary proceeding to obtain declaratory relief only when that request is related to one of the types of matters enumerated in Rules 7001(1) through (8). FED. R. BANKR. P. 7001(9). Standing alone, a ruling on the binding nature of Paragraph 104 is not related to any of the types of relief listed in subsections (1) through (8) of that Rule and, thus, may be brought by motion as a contested matter. *See* FED. R. BANKR. P. 7001, 9013, 9014; *see also, e.g.*, *LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747, 752 (3d Cir. 2020), *cert. denied sub nom. Citizens Against Corp. Crime, LLC v. Lennar Corp.*, 141 S. Ct. 2725, 210 L. Ed. 2d 885 (2021) (affirming district court's affirmation of bankruptcy court's order reopening the bankruptcy case and enforcing the terms of the confirmation order).

[4] Unless otherwise specified, all ECF Nos. will refer to docket entries in the First Congoleum Bankruptcy case, Case No. 03-51524.

"certainty" that they were relieved of all coverage liability, including non-asbestos claims. *See, e.g., Application in Support of Century Sale Motion* ¶ 52, ECF No. 4439-1; *Declaration of Howard N. Feist, III* ¶ 72, ECF No. 625 in Case No. 09-cv-04371 (JAP) ("The settling insurers with policies that covered non-asbestos claims indicated that they would not buy back their respective policies or pay any settlement amounts unless they received a full release for their non-asbestos claims, as well as their asbestos claims."); *Application in Support of Century Sale Motion* ¶ 52, ECF No. 4439-1 ("As a condition of the Settlement and Buyback Agreement, Century, on behalf of the Century Entities, will pay the Settlement and Buyback Amount *only if they can have certainty* that the Century Entities will be released fully from, and have injunctive protection against, all Claims, including non-asbestos claims, that may be based on, or derive from, the Subject Policies.") (emphasis added) (other emphasis omitted).  The anti-suit injunction also eliminated the additional insureds' ability to bring claims against their insurers.  By entering the Century Sale Order, Judge Ferguson approved the terms of the sale articulated in the Century Settlement based on § 363(b) and (f), and Century bought back the insurance policies free and clear of any interest, including interests held by additional insureds such as BIW.  Thus, by virtue of the Century Sale Order, the additional insureds were enjoined from suing, or seeking insurance coverage from, Century.

This Court reiterates that Judge Ferguson would not have—and could not have—approved a sale that stripped entities of their rights to coverage without ensuring that they received suitable compensation. *See, e.g., In re SportStuff, Inc.*, 430 B.R. 170, 179 (B.A.P. 8th Cir. 2010) (reversing bankruptcy court's approval of settlement with insurance carrier as not "fair and reasonable," in part, because additional insureds did not consent or receive adequate compensation).  The suitable

10

compensation that the additional insureds received in this case was the Finding that they had no responsibility for any of the liabilities of the Congoleum Flooring Business. Pursuant to the terms of the Century Settlement, any order confirming a plan of reorganization must contain this Finding. *Settlement and Buyback Agreement* 6, Section I(J), ECF No. 4439-2. Accordingly, this Finding was incorporated into the 2010 Confirmation Order by means of Paragraph 104.

Based on the factual record and public policy considerations, this Court concluded in the 2021 Summary Judgment Order that the Century Settlement sold the policies free and clear and that Paragraph 104 of the 2010 Confirmation Order established that BIW has no liability for any claims—asbestos and non-asbestos—stemming from the Congoleum Flooring Business. This Court further held that Paragraph 104 of the 2010 Confirmation Order is binding on Congoleum and enforceable against Congoleum. However, the 2021 Summary Judgment Order stopped short of making any determination as to the extent to which the 2010 Confirmation Order is binding on other creditors or parties in interest in the First Congoleum Bankruptcy because that issue was not presented to the Court at that time. The instant Motion presents that precise issue.

### 1. Resolution of this Issue is Appropriate in this Court

As an initial matter, the parties dispute which court—this Court or the district court—should address this Motion. Occidental argues that the district court is the best place to litigate the issues presented in this Motion. This Court disagrees. The Court recognizes that the parties are presently involved in litigation before the district court in the Occidental Lawsuit. However, this Motion seeks clarification and/or enforcement of orders entered in the First Congoleum Bankruptcy; specifically, the Century Sale Order and the 2010 Confirmation Order. Third Circuit

11

case law establishes that the bankruptcy court not only has authority, but is "well suited to provide the best interpretation of its own order." *In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418 (3d Cir. 2013) (quoting *In re Zinchiak*, 406 F.3d 214, 224 (3d Cir. 2005) (internal quotation marks omitted); *see also In re LandSource Communities Dev., LLC*, 612 B.R. 484, 493 (D. Del.), *aff'd sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747 (3d Cir. 2020), *cert. denied sub nom. Citizens Against Corp. Crime, LLC v. Lennar Corp.*, 141 S. Ct. 2725, 210 L. Ed. 2d 885 (2021) (collecting cases and observing that the Third Circuit consistently affirms bankruptcy court orders to reopen bankruptcy cases to permit bankruptcy courts to interpret and enforce their prior orders).

Admittedly, the orders at issue in this Motion were entered by other judges: Judge Ferguson having approved the Century Settlement, and Judge Pisano having entered the 2010 Confirmation Order.  However, under the circumstances of this case, it is both appropriate and within this Court's authority to interpret an order issued by another judge. *See, e.g.*, *Alley v. U.S. Dep't of Health & Human Servs.*, 590 F.3d 1195, 1202 (11th Cir. 2009) (observing that—due to the passage of time— a new judge may be asked to interpret an order issued many years before by a different judge); *see also In re China Peak Resort*, 76 B.R. 757, 759 (B.A.P. 9th Cir. 1987), *aff'd and remanded*, 847 F.2d 570 (9th Cir. 1988), *vacated sub nom. California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 109 S. Ct. 2228, 104 L. Ed. 2d 910 (1989) (discussing factors to be considered when determining which court should make the interpretation including, but not limited to: efficiency; consistency or accuracy in the interpretation; and responsibility of the issuing court); *Garcia v. Chrysler Grp. LLC*, No. 12-1797, 2015 WL 12857080, at \*4 (D.N.J. Mar. 9, 2015).

12

Occidental points out that the 2010 Confirmation Order, in fact, was issued by the district court and contends that "that is the very court which is presiding over the Occidental [Lawsuit]." *Occidental's Opposition* 20, ECF No. 8398.  However, the district court judge presiding over the Occidental Lawsuit is Judge Madeline Cox Arleo.  And, sadly, the district court judge who presided over confirmation in the First Congoleum Bankruptcy, Judge Pisano, has passed away. Occidental does not adequately explain why Judge Arleo—who has no unique familiarity with the underlying bankruptcy proceedings—is better suited to address and interpret the orders issued in the First Congoleum Bankruptcy than this Court.

Occidental contends that the issues presented in this Motion were "considered on a preliminary basis" in the related DVL Lawsuit. *Occidental's Opposition*, ECF No. 8398 at 21. However, the district court judge who presided over the DVL Lawsuit, Judge Kevin McNulty, does not preside over the Occidental Lawsuit.  Thus, any familiarity he may have had with the underlying bankruptcy proceeding is irrelevant as to which court—this Court or Judge Arleo's— should decide the instant Motion.  Moreover, contrary to Occidental's suggestion in its briefing regarding the depth of the district court's understanding of the issues, Judge McNulty, handling the DVL Lawsuit, did not engage in substantive interpretation of Paragraph 104 or an analysis as to the binding effect, if any, of the 2010 Confirmation Order on interested parties. Instead, Judge McNulty denied a motion to dismiss, stating that—on the record before him—he could not conclude that dismissal was appropriate on grounds of judicial estoppel, res judicata, and equitable estoppel. *See DVL, Inc. v. Congoleum Corp.*, No. 17-cv-04261, 2018 WL 4027031 (D.N.J. Aug. 23, 2018).  This Court, on the other hand, has dedicated an inordinate amount of time and resources

13

to the very issues presented in the Motion in the context of the Second Congoleum Bankruptcy, and has resolved these precise issues as between BIW and the Debtor.  Further, in light of this Court's ruling in the 2021 Summary Judgment Order, Judge McNulty approved dismissal of the claims against BIW with prejudice and terminated the DVL Lawsuit.

Finally, this Court notes that Occidental's supplemental arguments in favor of reserving this issue for the district court improperly focus on BIW's conduct.  Occidental contends that BIW is "forum shopping based upon its displeasure with prior results in the District Court." *Occidental's Supplemental Submission* 28, ECF No. 8410.  However, BIW's actions do not alter Third Circuit case law and do not change the fact that this Court is in the best position to address the issues presented by the Motion, which require a careful analysis of the history of this bankruptcy case and interpretation of bankruptcy-related orders.  Indeed, this Court recalls that BIW initially took a contrary position in the Second Congoleum Bankruptcy, advocating that interpretation of the 2010 Confirmation Order should be undertaken by the district court in the DVL Lawsuit.  Although BIW ultimately abandoned that argument, the Court disagreed with BIW at the time and, for substantially the same reasons, disagrees with Occidental now.

Given the circumstances of this case, the historical and procedural background of the underlying bankruptcy and related proceedings, and this Court's familiarity with the issues presented, this Court concludes that it is best suited to address the Motion.  Occidental has not demonstrated otherwise.  The Court now moves to the substance of the Motion.

### B. Standard for a Motion to Reopen

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); *see also* FED. R. BANKR. P. 5010. "The moving party has the burden to demonstrate sufficient cause to reopen a bankruptcy case." *In re One2One Commc'ns, LLC*, 627 B.R. 273 (Bankr. D.N.J. 2021) (quoting *In re Winburn*, 196 B.R. 894, 897 (Bankr. N.D. Fla. 1996) (citing *In re Geo Specialty Chemicals Ltd.*, 577 B.R. 142, 179 (Bankr. D.N.J. 2017))). The Third Circuit has stated that "bankruptcy courts have broad discretion to reopen cases after an estate has been administered," but has not set forth a specific test for determining when reopening a case is warranted. *In re Zinchiak,* 406 F.3d 214 (3d Cir. 2005). Rather, the appropriateness of reopening a case appears to depend upon the specific circumstances of the case. *See Geo Specialty Chemicals*, 577 B.R. at 179; *In re Mattera*, 203 B.R. 565, 568 (Bankr. D.N.J. 1997). Courts in this circuit have also considered a non-exhaustive list of factors when ruling on a motion to reopen, including: (1) the length of time that has passed; (2) whether any parties would be prejudiced if the case were or were not reopened; (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claim; and (4) whether parties would be entitled to any relief after the case was reopened. *See Reinert v. Vara*, 620 B.R. 536, 543 (W.D. Pa. 2020) (citing *Redmond v. Fifth Third Bank*, 624 F.3d 793, 803 (7th Cir. 2010)); *In re Frazer/Exton Dev., L.P.*, 503 B.R. 620, 634–35 (Bankr. E.D. Pa. 2013) (citing *In re Janssen,* 396 B.R. 624, 634–35 (Bankr. E.D. Pa. 2008); *In re Padilla,* 365 B.R. 492, 503 (Bankr. E.D. Pa. 2007)); *see also In re Janocha*, No. 06-20191, 2015 WL 128152, at *3 (Bankr. W.D. Pa. Jan. 8, 2015). Of these factors, courts in this circuit have

15

highlighted two of particular importance: timing and futility. *See In re Geo Specialty Chemicals*, 577 B.R. at 179; *In re Figlio*, 193 B.R. 420, 425 (Bankr. D.N.J. 1996).

With respect to timing, the inquiry can focus on two distinct time frames.  First, courts have observed that "[w]hen deciding whether to reopen an estate, 'the length of time between the estate's closing and the motion to reopen it should be of crucial significance to the bankruptcy court.'" *In re Geo Specialty Chemicals Ltd.*, 577 B.R. at 179 (citing *Stackhouse v. Plumlee (In re Plumlee),* 236 B.R. 606, 610 (E.D. Va. 1999) (internal citation omitted)). Equally significant, however, is the length of time that a party waits before filing a motion to reopen. *See Redmond,* 624 F.3d at 799. In any event, the more time that passes before a motion to reopen is filed, the heavier the burden becomes for demonstrating that reopening is warranted. *In re Geo Specialty Chemicals*, 577 B.R. at 178–79; *In re Figlio*, 193 B.R. at 425 (noting that debtor moved promptly to reopen the case, thus, laches did not apply to bar reopening).

When considering futility, this Court notes that, although the reopening of a bankruptcy case is a purely ministerial act, *In re Phillips*, No. 09-28759, 2012 WL 1232008, at *3 (Bankr. D.N.J. Apr. 12, 2012), it provides the moving party with an opportunity to seek substantive relief. *In re Frazer*, 503 B.R. at 635. Therefore, if the moving party cannot obtain the substantive relief which it intends to seek, "then there is no reason to grant a motion to reopen." *Reinert*, 620 B.R. at 543 ("A bankruptcy case should not be reopened where it would be a futile exercise or a waste of judicial resources.") (citing *Redmond*, 624 F.3d at 803).

With these factors in mind, this Court turns to the instant case and determines that BIW has satisfied its burden of showing that cause exists to reopen the First Congoleum Bankruptcy Case.

### 1. Timing

Occidental challenges the amount of time BIW waited before filing the instant Motion and points out that the First Congoleum Bankruptcy has been closed for more than ten years. *See Occidental's Opposition* 22-23, ¶ 28-29, ECF No. 8398. Indeed, courts should consider the length of time that has lapsed since the case closed. *See In re Geo Specialty Chemicals Ltd.*, 577 B.R. at 179. However, courts should also consider the length of time that a party waits before filing the motion to reopen after the event that triggered the motion occurred. *See Redmond,* 624 F.3d at 799. Given the circumstances of this case, this Court's timeliness inquiry is appropriately focused on the amount of time between the triggering event—Occidental's continuation of the Occidental Lawsuit—and the filing of the instant Motion. The record demonstrates that, following entry of the 2021 Summary Judgment Order in April 2021, BIW requested that Occidental voluntarily dismiss its claims against BIW in the Occidental Lawsuit on June 10, 2021. Occidental refused and instead filed a motion in the Occidental Lawsuit. In response, BIW filed the instant Motion before this Court on August 31, 2021, seeking a determination as to the binding nature of the Finding of Fact on third parties like Occidental. Accordingly, BIW waited less than three months after receiving Occidental's rejection before seeking relief. In total, the Motion was filed approximately four months after this Court issued the 2021 Summary Judgment Order. The Court

thus determines that BIW acted promptly in moving to reopen the case, which weighs in favor of granting the motion.

### 2. Futility

Occidental's primary arguments in opposition to this Motion focus on futility of reopening. As will be discussed, this Court determines that reopening this case would not be futile and that meaningful relief can and should be granted. The Court explains its rationale in the discussions below and, for those same reasons, rejects Occidental's futility arguments.

### C. Occidental, as a Creditor, is Bound by the 2010 Confirmation Order and Plan

Section 1141(a) of the Bankruptcy Code provides that "the provisions of a confirmed plan bind the debtor . . . and any creditor . . . whether or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a). This Court rules that Occidental was a creditor in the First Congoleum Bankruptcy and, therefore, is bound by the terms of the 2010 Confirmation Order under § 1141(a).

As Occidental states in their Opposition, the Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Occidental admits that it held an unsecured claim and was a creditor at the time the petition was filed in the First Congoleum Bankruptcy. However, Occidental maintains that after it was paid in full by means of the Critical Vendor Order, "Occidental did not believe it had any additional claims or causes of action against Congoleum[.]" *Occidental Opposition* 41, ECF No. 8398. Thus, Occidental asserts that it was not a creditor at the time of the 2010 Confirmation Order and cannot be bound by it pursuant § 1141(a). The facts belie Occidental's stated position.

It is undisputed that Occidental's environmental claims against Congoleum arose prepetition and that Occidental was aware of these claims prior to the First Congoleum Bankruptcy.[5] The Third Circuit Court of Appeals in *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.).,* 607 F.3d 114 (3d Cir. 2010), has clarified that a "claim" arises for purposes of a "right to payment" under the Bankruptcy Code, when an individual is exposed to a product or other conduct giving rise to the injury. The record before the Court makes clear that the alleged migration of discharged contaminants from Occidental's and other defendants' properties to the Lower Passaic River site occurred well before the First Congoleum Bankruptcy; indeed, Occidental concedes that Maxus Energy Corporation ("Maxus") filed an environmental claim in the First Congoleum Bankruptcy "on behalf of" Occidental pursuant to Bankruptcy Rule 3005.

Occidental explains that Maxus had indemnified Occidental for environmental liabilities; therefore, Maxus was attempting to keep Occidental's environmental liabilities as low as possible by seeking contribution from Congoleum. In Occidental's view, it was Maxus—and not Occidental—which possessed the claim and was entitled to vote on the plan. Occidental's

---

[5] Interestingly, in its Opposition to the Motion, Occidental initially claims it did not know of the environmental claims until long *after* the bankruptcy. *See Occidental's Opposition* 10, ECF No. 8398 ("Throughout the pendency of the Chapter 11 Cases, Occidental believed its only claim in the Chapter 11 Cases resulted from its business with Congoleum as a trade creditor. It was not until over a decade later that Occidental became aware of the potential environmental liabilities that caused it to commence environmental litigation (the 'Occidental Action').").
However, during the hearing on the Motion to Reopen and in the Supplemental Submission, Occidental seems to concede that it knew of the environmental claims long before the First Congoleum Bankruptcy and made a calculated decision not to file a proof of claim. *See, e.g., Transcript of BIW's Motion* 37:15-18, ECF No. 8409 ("We were aware that there was environmental litigation and you'll hear about this is [sic] a couple of minutes when we get to the proof of – the environmental proof of claim and Maxus."); *Occidental Supplemental Submission* 20, ¶32, ECF No. 8410 ("While it is certainly true that Occidental could have filed a contingent, unliquidated proof of claim in the Chapter 11 Cases even though it had an indemnitor, the fact is it did not."); *id.* at ¶34 ("If Occidental wanted to control the Environmental Claim, it would have filed a proof of claim on its own to begin with. The fact is, nothing changed that would have altered Occidental's calculus for years – indeed, until six years after the confirmation order was entered.").

argument ignores the fact that it could have filed its own claim.  Occidental concedes this fact. *See,*

*e.g.*, *Occidental Supplemental Submission* 20, ¶32, ECF No. 8410 ("While it is certainly true that

Occidental *could have* filed a contingent, unliquidated proof of claim in the Chapter 11 Cases even

though it had an indemnitor, the fact is it did not.") (emphasis in original); *see also id.* at ¶31,

("Maxus and Tierra had sufficient motivation to file a proof of claim on Occidental's behalf when

*Occidental chose not to file a claim itself.*") (emphasis added).  As Occidental, itself, explains, it

chose not to file a claim in the First Congoleum Bankruptcy; instead allowing Maxus and Tierra

Solutions, Inc. ("Tierra"), represented by counsel Andrews Kurth, LLP, to do so on its behalf.  Put

simply, Occidental's litigation strategy (possibly seeking to avoid submitting to the jurisdiction of

the bankruptcy court or waiving the right to a jury trial) does not strip it of its creditor status.

The record establishes that Occidental received a copy of the Disclosure Statement, notice

of the Confirmation hearing, and a copy of the proposed 2010 Confirmation Order.  Moreover, at

one point during the First Congoleum Bankruptcy—only a few months prior to the hearing on the

Century Sale Motion—Occidental revised on the docket its identification of counsel to ensure that

it continued to receive notice. *See Change of Address  for Creditor, Occidental Chemical Corp.*,

ECF No. 4134.  Thus, as a creditor, Occidental had notice and opportunity to be heard as to the

adequacy of the Disclosure Statement and the contents of the Plan. *See United Student Aid Funds,*

*Inc. v. Espinosa*, 559 U.S. 260, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) (holding that creditor's

receipt of actual notice of the filing and contents of debtor's plan more than satisfied creditor's due

process rights).  Instead, Occidental chose to permit counsel for Maxus and Tierra to file a claim

and pursue Occidental's rights on Occidental's behalf.

Occidental's submissions explain, in detail, the rationale behind its decision to not file a proof of claim.    However, as Occidental's own arguments indicate, its decision "had consequences." *Occidental's Supplemental Submission* 21, ¶33, ECF No. 8410.    Occidental contends that BIW does not present any authority for the position that "a party that affirmatively chose not to file a proof of claim is nevertheless bound by a plan because someone else filed a proof of claim under Bankruptcy Rule 3005 on its behalf." *Id.*    However, it is not the filing of a proof of claim that binds a creditor to the terms of a confirmation order. *See* 11 U.S.C. § 1141(a); *see also*, *e.g. In re Reg'l Bldg. Sys.*, 251 B.R. 274 (Bankr. D. Md. 2000), *subsequently aff'd sub nom. In re Reg'l Bldg. Sys., Inc.*, 254 F.3d 528 (4th Cir. 2001) (holding that under § 1141(c) creditor need not have filed a proof of claim in order for its lien to be extinguished upon confirmation of Chapter 11 plan).    Rather, it is the entity's status as a creditor. *Id.*    Here, Occidental held a contingent, unliquidated claim and, thus, was a creditor. Occidental presents no authority for its contrary position that an entity who affirmatively chose not to file a proof of claim is somehow *not* bound by a confirmation order that addresses their claim—even where that proof of claim was filed by another party.

Moreover, Occidental concedes that it "*could* have taken over the Environmental Claim filed on its behalf," and goes so far as to state that "[i]f Occidental wanted to control the Environmental Claim, it would have filed a proof of claim on its own to begin with." *Id.* at ¶34. Occidental's dissatisfaction with its litigation strategy in the First Congoleum Bankruptcy does not amount to a deprivation of due process. *See, e.g. In re Gaime*, 17 F.4th 1349 (11th Cir. 2021) (holding that denying insurance company ability to reassert itself in litigation that it previously

voluntarily left did not deprive it of due process because it had a meaningful opportunity to participate); *see also Espinosa*, 559 U.S. at 272 ("Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L.Ed. 865 (1950)); *Jones v. Flowers,* 547 U.S. 220, 225, 126 S. Ct. 1708, 164 L.Ed.2d 415 (2006).   Likewise, Occidental's failure to vote on the Plan is of no import and does not create a crack in the bedrock principle that a confirmed Plan and attendant confirmation order are binding on all creditors. *See* 11 U.S.C. § 1141(a). Because this Court concludes that Occidental was a creditor at the time of the 2010 Confirmation Order, it is so bound under § 1141(a). The Court need not address Occidental's arguments regarding the binding effect of the 2021 Summary Judgment Order. *See Occidental's Opposition* 28-29, ¶ 42-46, ECF No. 8398.   The 2021 Summary Judgment Order merely interpreted the terms and effect of the 2010 Confirmation Order as to the parties BIW and Congoleum.   This Court now expands that interpretation to determine the 2010 Confirmation Order's effect on other interested parties, like Occidental.

Occidental next argues that—even if it had taken interest in the Disclosure Statement and Plan—it "had no reason to believe any future rights would be affected."   *Occidental's Opposition* 42, ¶69, ECF No. 8398.   This argument is premised on two contentions.   First, Occidental maintains that the information in the Disclosure Statement and the Finding of Fact contained in the proposed confirmation order were insufficient to make Occidental aware of any preclusive or injunctive effect on its rights.   Second, Occidental argues that—even if had "stumbled across" the

Finding of Fact at issue in the proposed confirmation order—Occidental still would not be bound

by the 2010 Confirmation Order because it had no context in which to interpret that Finding as the

result of being denied adequate notice of the Century Sale. *Occidental's Opposition* 42, ¶69, ECF

No. 8398.    Accordingly, this second argument is tied to Occidental's due process argument

regarding the Century Sale Motion and Order.

### 1.   Information Provided by means of the Confirmation Process

The Court concludes that the documents indisputably provided to Occidental—including

the Disclosure Statement and proposed confirmation order—adequately advised entities with

contingent non-asbestos claims, like Occidental, that their rights may be affected.    Additionally,

the on-record discussions during the Confirmation Hearing likewise notified creditors like

Occidental that the Plan in this case incorporated settlements and injunctions that affected the

liability of additional insureds and, thus, could impact an entity's ability to collect from those

additional insureds.    For the reasons discussed below, the Court determines that Occidental

received adequate notification by means of the confirmation process and had sufficient opportunity

to be heard regarding the Century Settlement and the findings of fact to be made by Judge Pisano,

consistent with the Century Settlement, such that Occidental is bound by the 2010 Confirmation

Order.

### a.   Information Contained in Disclosure Statement

Occidental repeatedly challenges the sufficiency of the information contained in the

Disclosure Statement.    Specifically, Occidental alleges that the Disclosure Statement does not

mention BIW or the Finding of Fact. *Occidental's Supplemental Submission* 5, ECF No. 8410.    In

Occidental's view, if the Finding of Fact were so critical to the Plan and 2010 Confirmation Order, it would have been—and should have been—highlighted for interested parties.  Finally, Occidental asserts that the failure to adequately disclose the Finding of Fact in the Disclosure Statement deprived creditors of notice that "such an issue would arise at the confirmation hearing for them to contest." *Occidental's Supplemental Submission* 10, ¶7, ECF No. 8410.

The Court has reviewed thoroughly the Disclosure Statement and related documents.  The Court acknowledges that the Disclosure Statement does not specifically reference the Finding of Fact at issue in this Motion.  However, it makes explicit reference to the Century Settlement in § 5.10(j). *Disclosure Statement* 52-53, ECF No. 435-1 in Case No. 09-cv-04371 (JAP).  That section briefly describes the Century Settlement and indicates that the bankruptcy court approved the sale of certain insurance policies free and clear.  It explains that the Century Settlement "resolves coverage obligations under certain policies under which Congoleum is an insured with respect to both asbestos and non-asbestos claims[,]" and advises that "[r]eference should be made to the terms of the Century Settlement and Buyback Agreement, which is attached as an exhibit to the [Century Sale Motion] and which is on file with the Bankruptcy Court for more details on the Century Settlement and Buyback Agreement." *Id.* at 53.  Thus, the Disclosure Statement places a creditor on notice that, to the extent it held a non-asbestos claim, it should review the terms of the Century Settlement. Occidental chose not to do so. There is no question that a review of the Century Settlement Agreement offers the reader of the document a firm understanding that the settlement would impact the available insurance coverage under Congoleum's policy related to the Congoleum Flooring Business located at the subject Kearny Property.  Occidental cannot now

claim that it did not know to check the Century Settlement when the Disclosure Statement explicitly advised parties to review the Century Settlement and provided instructions as to where that document could be found.

Indeed, BIW suggests that parties who wanted to know more about the Century Settlement were guided by the Disclosure Statement to read and review the agreement itself. Occidental claims "this is not how disclosure statements work." *Occidental's Supplemental Submission* 7, ¶2, ECF No. 8410. To the contrary, disclosure statements frequently contain attachments or exhibits which are referenced in the disclosure statement itself. *See, e.g.*, *In re Maremont Corp.*, 601 B.R. 1, 199 (Bankr. D. Del. 2019) (approving disclosure statement in asbestos bankruptcy case that referenced and attached documents governing agreements and releases); *In re Panda Temple Power, LLC*, No. 17-10839 (LSS), 2017 WL 5483155, at *5 (Bankr. D. Del. June 29, 2017) (approving disclosure statement that attached exhibits). Each interested party is tasked with reading the disclosure statement and any referenced documents, if pertinent, and taking appropriate steps to protect its rights.

The Court understands Occidental's argument. It contends that it is "impractical and unfair to creditors or other interested parties" to require them to reference attachments to an already lengthy and complicated disclosure statement in order to discover how, or if, their rights are affected. *Occidental's Supplemental Submission* 7, ¶3, ECF No. 8410. Occidental argues this is especially true given that the Disclosure Statement in this case discussed thirteen separate settlements and did not give any "hint that the Century Settlement would affect creditors' rights against third parties for environmental claims." In Occidental's view, a disclosure statement

should include some signal to creditors that their rights may be affected before the creditors should be expected to cross-reference a separate settlement agreement. From the Court's vantage point, however, the Disclosure Statement in this case contained such a signal.

The Court acknowledges that the Disclosure Statement described thirteen separate settlements with insurers and brokers over the course of seven pages. Each insurer settlement was discussed in a separate section and referred parties to the underlying agreement document for more details regarding the terms of the settlement. Indeed, parsing through sections in the Disclosure Statement and the agreements referenced therein may be time-consuming and tedious, but that is the cost of protecting one's rights. Occidental is a sophisticated entity with extremely competent legal representation. To be sure, the proposed Finding could have been better highlighted. However, the signal was not so vague, and the task was not so onerous, as to amount to lack of due process. In so concluding, the Court also considers the consequences of its determination on the interested parties. Here, the Court is faced with two competing policies: weighing the sufficiency (as opposed to absence) of notice to sophisticated, active and competently-represented parties like Occidental, against a potential uncompensated property loss to additional insureds and other third parties like BIW for the elimination of insurance coverage rights to which they are entitled. Given the circumstances of this case, the equities weigh in favor of ensuring the preservation of the adequate protection assurances which Congress implemented as an integral part of 11 U.S.C. §§ 361 and 363(b) and (f). Again, it must be noted that the task before this Court is not to adjudge whether it was prudent or proper for Judge Ferguson to approve the 2006 Century Settlement or for Judge Pisano to enter the 2010 Confirmation Order, which included the

mandated proposed Finding of Fact.  Rather, this Court need only resolve, as it does now, whether these orders should continue to have binding effect, well over a decade later, upon a party which could have taken appropriate action at the time.

In sum, this Court does not share Occidental's view regarding the lack of information provided in the Disclosure Statement.  As a creditor with a contingent non-asbestos claim, there were limited sections of the Disclosure Statement that pertained to, or could potentially affect, Occidental's rights.  Settlements with insurance carriers would have been particularly relevant to Occidental.  Occidental could have read those sections in detail and cross-referenced the underlying agreements.  It chose not to do so.  The Third Circuit has explained that "[t]he reorganization process is dependent on the proper notification to creditors and other interested parties of all important steps in the proceeding *so that they may take such steps as necessary to safeguard their interests*." *In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3d Cir. 1967) (emphasis added); *see also In re Weiand Auto. Indus.*, 612 B.R. 824, 847 (Bankr. D. Del. 2020). Here, the Debtor provided Occidental with proper notification of an important step in the proceeding, but Occidental opted not to take steps to safeguard its interests with respect to its contingent environmental claim.

Finally, the Court wishes to address Occidental's argument that ruling in BIW's favor would lead to, essentially, bad public policy.  Occidental states that permitting the "functional equivalent" of a third-party release without mention of it in the disclosure statement would encourage debtors to "hide controversial terms in other documents and make vague incorporations by reference, without the disclosure statement even tipping the reader off as to why that document

is being incorporated by reference, hoping creditors do not actually read the referenced document."

*Occidental's Supplemental Submission* 8-9, ¶5, ECF No. 8410.  Occidental doubles down on this

sentiment in a hypothetical presented in a footnote.  The footnote suggests that disagreeing with

Occidental on this issue means that an acceptable disclosure statement need only vaguely refer to

"important motions filed and orders entered" in the bankruptcy case and advise creditors to review

the entire docket in a case. *Id.* at ¶5 n.6.  This line of thinking ignores both the Bankruptcy Code

and the role a court plays in the process.  As a reminder, disclosure statements must be approved

by the court to ensure they contain adequate information.  The term "adequate information" is

defined in the Code as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable . .
> . that would enable a hypothetical investor typical of holders of claims or interests
> . . . of the relevant class to make an informed judgment about the plan . . . and in
> determining whether a disclosure statement provides adequate information, the
> court shall consider the complexity of the case, the benefit of additional information
> to creditors and other parties in interest, and the cost of providing additional
> information . . . .

11 U.S.C. § 1125(a)(1); *see also In re Lower Bucks Hosp.*, 488 B.R. 303, 317 (E.D. Pa. 2013),

*aff'd*, 571 F. App'x 139 (3d Cir. 2014).  Thus, contrary to Occidental's position, a finding in BIW's

favor on this issue does not automatically lead to a parade of horribles by which debtors will be

able to hide elements of a plan, engage in a "gotcha," or "trick[] creditors" into believing that their

rights are not affected so that they are dissuaded from reading a plan in detail. *Occidental's*

*Supplemental Submission* 9, ¶6, ECF No. 8410. To the apparent surprise of some, the courts do

serve a function in ensuring that creditors are provided with meaningful access to information.

Guided by the Code, courts determine the adequacy of the information presented in disclosure

statements.  "What constitutes 'adequate information' is determined on a case-by-case basis, with

the ultimate determination within the discretion of the bankruptcy court." *In re Lower Bucks Hosp.*,

488 B.R. at 317 (citing *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1156–57 (5th Cir. 1988)).  In

this case, Judge Pisano approved the adequacy of the Disclosure Statement over a decade ago.

Occidental cannot now collaterally attack that determination by way of its opposition to BIW's

Motion.  In any event, this Court determines that the Disclosure Statement and related documents

contained sufficient notification to allow parties to take steps to protect their rights. *See Espinosa*,

559 U.S. at 272 (explaining the type of notice required to satisfy due process).

### b.  Confirmation Hearing

It is undisputed that Occidental received notice of the scheduled Confirmation Hearing in

this case.  Had Occidental chosen to attend the hearing, it again would have been advised of the

inclusion of a § 105(a) anti-suit injunction built into the settlement with insurers, which could

potentially impact its contingent non-asbestos claim.  During the Confirmation Hearing, counsel

for Debtor explained:

> We've also provided for a Section 105(a) supplemental . . . non-asbestos injunction
> . . . for the policy coverages that were brought [sic] back by the insurers that are not
> asbestos, environmental coverage for example, any other kind of general liability
> coverage.  Because these are total policy buybacks, doing a total policy is entitled to
> the 105 injunction to support the fact that it can't now get sued on an environmental
> claim or some other claim and your Honor has approved a number of settlements as
> to Judge Ferguson that incorporate 105 injunction, policy buybacks.

*Transcript of Confirmation Hearing* 38:15-25, ECF No. 747 in Case No. 09-cv-04371 (JAP) (June

7, 2010).

Occidental elected not to participate at the hearing and, thus, was not witness to this discussion.  Again, Occidental cannot cry foul as the result of its chosen litigation strategy; nor can it assert that Debtor was required to provide more or different notice.  The Third Circuit has stated that "the purpose of the notice requirement is to advise individuals who will be affected by the outcome of any proceeding of the impending hearing so that they can take steps to safeguard their interests." *In re Penn Cent. Transp. Co.*, 771 F.2d 762, 768 (3d Cir. 1985) (citing *Memphis Light Gas & Water Division v. Craft,* 436 U.S. 1, 14, 98 S. Ct. 1554, 1563, 56 L.Ed.2d 30 (1978); *Greene v. Lindsey,* 456 U.S. 444, 451, 102 S. Ct. 1874, 1878, 72 L.Ed.2d 249 (1982) (emphasis removed));  *In re Weiand Auto. Indus.*, 612 B.R. at 848.  However, "[t]he notice requirement is not necessarily intended to advise them of the nature of those interests." *In re Penn Cent. Transp. Co.*, 771 F.2d at 768.  Thus, after receiving notice of the Confirmation Hearing, it was incumbent on Occidental to take steps both to identify its interests at stake and to protect those interests. Occidental opted to do neither.

### c.  Confirmation Order

Occidental received a copy of the proposed Confirmation Order.  A review of this document would have revealed multiple references to the § 105(a) anti-suit injunctions and the insurer settlement agreements—specifically, the Century Settlement and the Finding of Fact therein. *See, e.g., Confirmation Order* 46-47, 52-53, 89, ECF No. 664.  The section of the 2010 Confirmation Order devoted to the Century Settlement again discussed the anti-suit injunction and the history of the Century Settlement. *See Confirmation Order* 52-53, ¶ 103, ECF No. 664. The 2010 Confirmation Order also included Paragraph 104, which reiterated the bankruptcy court's

30

determination that additional insureds "have no responsibility for any of the liabilities of the
Congoleum Flooring Business." *Id.* at ¶104. This paragraph explicitly named BIW as an additional
insured. Occidental had an opportunity to review the proposed Confirmation Order—or, at the
least, the portions of the Confirmation Order that were potentially relevant to its contingent
environmental claim—and if concerned about the impact upon its contingent claim, could have
objected to the entry of the order or sought relief from same upon entry. Occidental instead opted
not to involve itself in the confirmation process. This litigation strategy amounted to Occidental
blindfolding itself to the terms and effect of the 2010 Confirmation Order. Occidental cannot now
complain that it could not see.

### d. Information Occidental Overlooked in Confirmation Process

The Court concludes that the filings and hearings related to the confirmation process
sufficiently apprised creditors with contingent non-asbestos claims, like Occidental, that their
rights were being impacted by plan and settlements included therein. The Court reaches this
conclusion after a thorough review of the record. As discussed, the Disclosure Statement directs
interested parties to review the Century Settlement and provides instructions for where that
document can be found. A review of the Century Settlement reveals that the Century Settlement
was subject to certain conditions precedent. *See Settlement and Buyback Agreement* 10, Section II
"Conditions Precedent," ECF No. 4439-2. Several of those conditions are particularly relevant to
resolution of this Motion. First, the Century Settlement was contingent on entry of a Confirmation
Order that contained an explicit finding regarding liability—precisely the Finding of Fact presently
at issue in this Motion. As a term of the Century Settlement, the Confirmation Order had to contain

an explicit finding that certain entities, including BIW, "have no responsibility for any of the liabilities of the Congoleum Floor Business." *Id.* at 6, Section I(J)(iv).  The Century Settlement was also dependent on the Debtor filing a modified Plan that provided for, in relevant part, a § 105(a) injunction that shielded Century from claims against it.  Finally, the Century Settlement was expressly contingent upon entry of the Confirmation Order and expiration of the times for appeal, reconsideration, or other challenges to that order.

As noted previously, the Century Settlement was not consummated until various conditions were satisfied through confirmation of the Plan. Thus, to the extent Occidental wished to weigh in as to the terms of the Century Settlement and its impairment of Occidental's rights, it had an additional opportunity to do so through subsequent participation and negotiation in the case through the confirmation process. *See, e.g.*, *Confirmation Order* 43-44, ECF No. 664 (explaining that as the result of objections and various court rulings, modifications were made to the Plan with respect to the "Original Litigation Settlement Agreement"); *Confirmation Order* 82, ECF 664 (providing for "Reservation of Rights").  Occidental has not justified its strategic decision to "sit this one out" during the balance of Congoleum's chapter 11 case—until it seeks to do so now.

### 2.  Impact of Alleged Lack of Notice of Century Sale Motion

Occidental's second argument that it should not be bound by the 2010 Confirmation Order is linked to its allegation that it did not receive due process with respect to the Century Sale Motion. Specifically, Occidental contends that without notice and the opportunity to be heard on the issues raised in the Century Sale Motion, it was without "context" to determine the effect of the Century Settlement and the Finding of Fact when it received the Disclosure Statement and proposed

Confirmation Order. *See Occidental's Opposition* 42, ¶69, ECF No. 8398.  In short, Occidental

argues that—without the opportunity to participate in the Century Sale Motion—it had no way of

knowing, based on the information provided in the Disclosure Statement and Confirmation Order,

that its rights were affected.  As an initial matter, the Court rejects this argument and, for the

reasons discussed above, determines that the Disclosure Statement and proposed Confirmation

Order sufficiently advised creditors with contingent non-asbestos claims, like Occidental, that their

rights may be impacted by settlements with the insurers.  Nevertheless, the Court will address

Occidental's due process argument relative to the Century Sale Motion in the sections below.

### D.  Century Settlement

The parties sharply contest whether Occidental received notice of the Century Sale Motion

and the pertinent provisions of the Century Settlement Agreement.  The Court finds that it is more

likely than not that Occidental received adequate notice; however, the Court cannot make a

conclusive finding on this record. Nonetheless, the Court need not undertake further examination,

as the issue of notice to Occidental with regard to the Century Sale Motion is unnecessary for

resolution of this Motion.

### 1.  Notice of the Century Sale Motion

Occidental contends that it was not served with the Century Sale Motion and, as a corollary,

cannot be bound by the Century Sale Order.  Occidental points to the fact that "[t]he Certificate of

Service filed on the docket for the Century Sale Motion indicates that the Century Sale Motion

was only served on the 'Master E-Mail Service List[,]'" as opposed to the "Master Service List."

*Occidental's Opposition* 25, ¶ 34, ECF No. 8398; *see also Occidental's Supplemental Submission*

12-13, ¶ 11-12, 14, ECF No. 8410. This is inconsistent with the representations made by Debtor's counsel in the Application, in which Debtor's counsel represents that service was made upon the "Core Service List," the "Master Service List," and the "Master E-Mail Service List." *See Application in Support of Century Sale Motion* ¶ 60, Case No. 03-51524, ECF No. 4439-1. Occidental highlights this discrepancy and notes that the "Master E-Mail Service List" did not include Occidental or its counsel. This unexplained inconsistency in the motion pleadings does not measure up against the weight of the record, which supports that proper service was effectuated.

First, the Century Settlement expressly required service of the Century Sale Motion as follows:

> Serve the motion and notice of a hearing on such motion in a form, manner and scope that is in compliance with all applicable Bankruptcy Rules upon: (a)the **"Core Service List" and the "Master Service List,"** each as defined in the Order Establishing Case Management and Administrative Procedures, dated February 25, 2004, and the "**Master E-Mail Service List**," as defined in the Order (1) Amending The Order Establishing Case Management and Administrative Procedures Entered On February 25, 2004 And The Order Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals Entered On February 10, 2004 And (2) Allowing Notice By E-Mail And Establishing Procedures Therefor, dated September 6, 2005 . . . . [balance of paragraph omitted]

*Century Settlement*, Section IV(A)(ii), ECF No. 4439-2 (emphasis added).

During the hearing on the Century Sale Motion, Judge Ferguson found that notice was adequate. *See Transcript of Hearing on Century Sale Motion* 62:13-17, ECF No. 4568 (Sept. 11, 2006) ("Notice of this motion was adequate, as it was served on, among others, the ACC members and its counsel, all parties who have filed a Notice of Appearance, anyone who's filed a 2019 statement, as well as being published in national and international editions of USA Today."). Likewise, Judge Pisano, in confirming the Plan, made specific findings with respect to the

34

settlements, including the Century Settlement.   One of those findings was that "[t]he Debtors

provided extensive notice of the Century Approval Motion to all parties-in-interest." *Confirmation*

*Order* 52, ECF No. 664.   In the three years between the approval of the Century Sale Motion and

the Confirmation Hearing, no one—including Occidental—challenged the manner and

completeness of service as required under the Century Settlement.   These findings weigh in favor

of BIW's argument that Occidental received notice of the Century Sale Motion.

Additionally, Occidental does not dispute that Andrews Kurth, LLP—who filed the claim

in the First Congoleum Bankruptcy on Occidental's behalf—was served with the Century Sale

Motion.   Instead, Occidental maintains that Andrews Kurth, LLP was not representing Occidental

in the First Congoleum Bankruptcy; therefore, service on that law firm did not effectuate service

on Occidental.   The Court makes no finding as to the relationship between Andrews Kurth, LLP

and Occidental in the First Congoleum Bankrupty and notes only that Occidental, Maxus, and

Tierra jointly retained Andrews Kurth in the Occidental Lawsuit. *See, e.g.*, *Plaintiff's Response to*

*Small Parties Group's Motion to Compel Documents Withheld as Privileged* 12, n.5, ECF No.

1102 in Case No. 18-cv-11273 (MCA) (explaining that "Maxus also retained the law firm Andrews

& Kurth LLP to assist with Vinson & Elkins' representation of Maxus, Tierra, and OxyChem");

*see also id.* at 18 (asserting joint-client privilege); *Transcript of Hearing on Motion to Reopen*

43:17-18, ECF No. 8409 (". . . Andrews & Kurth – yes, it did represent Occidental for certain

purposes. . . .").

Finally, as BIW points out, the record demonstrates that Occidental received notice of the

Century Sale Order after its entry and also received the Notices of Appeal filed by various insurer

entities challenging the Century Sale Order. *See, e.g.*, *Certificate of Service for Notice of Appeal on behalf of Employers Insurance of Wausau*, ECF No. 4661-1 (indicating Occidental was served at its corporate address and through its counsel of record, Andrews Kurth, LLP). In looking at the record and weighing these competing arguments, the scales once again tip in favor of a finding that Occidental received notice of the Century Sale Motion. Nonetheless, this Court concludes that it is not necessary to resolve the notice dispute in order to decide whether Occidental is bound by the 2010 Confirmation Order and the Finding of Fact therein.

Occidental indisputably received notice of the Disclosure Statement, Confirmation Hearing, and proposed Confirmation Order. Thus, even assuming that Occidental was not properly noticed of the Century Sale Motion, it was not deprived of the opportunity to be heard regarding the Century Settlement because that agreement was not consummated until the Confirmation Order became final. *See, e.g.*, *In re Energy Future Holdings Corp*, 949 F.3d 806, 822 (3d Cir. 2020) (holding that even though party had been deprived of due process at one stage of the bankruptcy proceeding the "combination of notice and hearing available to them" at another stage rendered notice "constitutionally adequate"). As discussed, Occidental had the opportunity to participate in the confirmation process and, at that time, could have challenged the terms of the Century Settlement and the District Court's Finding of Fact. *See, e.g.*, *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L.Ed.2d 62 (1965); *In re Gaime*, 17 F.4th 1349 (11th Cir. 2021).

## 2. Failure to Establish Lost Opportunity

During the hearing on this Motion, the Court queried counsel for Occidental to explain what opportunity was lost as the result of the alleged lack of notice of the Century Sale Motion.

In other words: what would have been Occidental's objection to the Finding that BIW had no

liability? *See Transcript of Hearing on Motion to Reopen* 36:19 – 37:3, ECF No. 8409 (November

18, 2021). Counsel for Occidental did not have a clear answer at the time, stating simply that it

"very well might have objected to that provision.  We just don't know, and we'll never be able to

find out." *Id.* at 37:21-23.  In its Supplemental Submission, Occidental provided a slightly more

expansive answer, indicating that—although it had decided that filing a contingent, unliquidated

claim against Congoleum was not worthwhile—"it may have had a different perspective with

respect to a solvent third party like BIW." *Occidental's Supplemental Submission* 11, ¶ 10, ECF

No. 8410.  Although this supplemental response remains vague, Occidental is correct in its

assertion that the focus of a due process deprivation inquiry is on the lost opportunity.  However,

the Court must also look at the alleged harm to the party claiming lack of due process. *See, e.g.*,

*Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) ("The failure to give adequate notice [under Rule

56] does not, however, require automatic reversal; it may be excused if the failure was a 'harmless

error' "); *Yates Real Est., Inc. v. Plainfield Zoning Bd. of Adjustment*, 435 F. Supp. 3d 626, 633

(D.N.J. 2020) (collecting cases holding that failure to provide notice can be excused where there

is no prejudice to the parties); *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340 (3d Cir. 2010) (holding

in context of removal proceeding that, although party was not provided with notice, he was not

deprived of due process because no prejudice resulted).  Here, the Court cannot ignore that various

insurers *did* challenge the Finding as to liability at the time of the Century Sale Motion. *See, e.g.*,

*Objection of Wausau*, ECF No. 4517 (objecting, in part, because proposed agreement affected the

rights, claims, and interests of non-debtor third parties); *Objection of First State Insurance*

*Company and Twin City Fire Insurance Company*, ECF No. 4515; *see also Transcript of Hearing on Century Sale Motion* 27:21–28:17, 51:3–52:9, 58:18–59:3, 61:23–62:2, ECF No. 4568 (Sept. 11, 2006); *id.* at.

During the hearing on the Century Sale Motion, counsel for Debtor explained that, as part of the Century Settlement, it was advocating for the Finding of Fact regarding liability and that three excess insurers had objected. *Transcript of Hearing on Century Sale Motion* 51:3–6, ECF No. 4568 ("After a great deal of due diligence there is no question in my client's mind that we are the successor, the company that is now called Congoleum is the successor to all of the flooring businesses that had been run by predecessors."); *id.* at 52:1–3 ("Well, the only objectors we have, . . . there are three of them, are excess carriers who have not settled."). Counsel for Debtor further explained its position that the § 105(a) injunction was "a compliment to [§] 524(g) insofar as it applies to the nonasbestos coverages that are being bought back"—specifically, those "environmental claims" and "long latency pollution claims." *Id.* at 53:5–7, 53:9–10.

Judge Ferguson weighed the positions in favor against the Century Settlement. She considered the oral arguments presented at the hearing as well as the evidence submitted in support of the Century Sale Motion and the proposed Finding of Fact. Ultimately, Judge Ferguson approved the sale and buyback agreement. In doing so, Judge Ferguson implicitly rejected the arguments presented by the objecting insurers and approved the settlement which required the Finding regarding Congoleum's exclusive liability for claims connected to the Congoleum Flooring Business. The very issues and arguments which Occidental could have raised in response to the Century Sale Motion clearly were pressed, addressed, and rejected at the hearing on the

Century Sale Motion. This Court questions whether there was indeed a lost opportunity.  This

uncertainty—and Occidental's failure to clarify or explain how the result of the hearing would

have differed had it participated in the Century Sale Motion—further buttresses this Court's

determination that Occidental was not deprived of due process, even assuming a lack of notice.

### E.  Effect of Confirmation and Incorporation of Century Settlement

Many of Occidental's objections to the Motion relate to the effect of the 2010 Confirmation

Order, specifically, the nature of the Finding of Fact.  Occidental contends that BIW's suggested

reading of the Finding constitutes an impermissible third-party release.   Occidental also submits

that the Motion seeks to impermissibly "enforce" a finding of fact and that BIW's proffered

reading of the 2010 Confirmation Order violates CERCLA.  The Court takes this opportunity to

clarify the effect of the 2010 Confirmation Order, including the Finding of Fact and the relief

sought by way of this Motion.

### 1.  Finding of Fact was a Determination as to Liability, not a Release

The Court does not view the Finding of Fact to be a "release."  It is evident from the

Century Sale Motion, the transcript of the hearing on the Century Sale Motion, and from the plain

language of the Settlement Agreement and the 2010 Confirmation Order, that the Finding was a

determination as to liability.   Although Occidental attempts to frame this finding as a

"quintessential third-party release," its position is unsustainable. *Occidental's Supplemental*

*Submission* 22, ¶36, ECF No. 8410.  In support of this argument, Occidental cites to the tense of

the Finding—present tense—and to the language of this Court's 2021 Summary Judgment Order.

Occidental's argument misses the mark.  An examination of the record conclusively establishes

that Congoleum conceded it was responsible exclusively for all liabilities arising from the Congoleum Flooring Business—not BIW or any of the other additional insureds—and, based on the evidence presented, the bankruptcy court agreed.  This constitutes a finding, not a "release."

In the course of the Century Sale Motion, the Debtor presented evidence establishing that it was the responsible party for any of the non-asbestos claims stemming from the flooring business.  Counsel for Debtor explained during the Century Sale Motion, "What we're saying is if you think we're not the successor to the flooring business, the sheet vinyl and linoleum flooring business then come in here and tell us that." *Transcript of Century Sale Motion* 51:19–21, ECF No. 4568.  Three excess insurers did just that and objected to the Century Sale Motion, including the finding regarding liability. In responding to the insurers' objections, the Debtor distinguished between its operations in the flooring business and the operations of the additional insureds. *See e.g., Transcript of Century Sale Motion* 51:16–19, ECF No. 4568 (clarifying that the finding sought pertained to claims relating to the flooring business as opposed to "having to do with insulating a nuclear submarine [which related to BIW's operations] or crushing up rock at a mine in Pennsylvania [which related to another entity, Pennsylvania Crusher Corporation's operations]."); *id.* at 52:4–9 ("So Your Honor, what's being sought is non, is a sale of the, of nonasbestos coverages, as well as asbestos coverages here for flooring business claims.  That's it.  Flooring business claims not insulating nuclear submarines or mining operations in Pennsylvania or whatever.  Flooring business claims.  That's what we're doing."). Over the objections, the bankruptcy court ruled in favor of the Debtor and agreed that Congoleum, in fact, was the party

with liability for all claims stemming from the flooring business and approved the Century Settlement in which BIW and other additional insureds were stripped of their insurance coverages.

To the extent Occidental takes issue with the Finding's use of the present tense, this Court now clarifies: The named additional insureds, including BIW, *never had* any liability.  Afterall, the record clearly establishes that the liability at issue was tied to the flooring business, for which the Debtor solely was responsible.  The additional insureds were engaged in other activities—such as BIW's nuclear submarine insulation operations or Pennsylvania Crusher Corporation's rock crushing operations—and, as such, the additional insureds are not—and never were—liable for claims relating to the flooring business.

Occidental additionally points to the language used in this Court's 2021 Summary Judgment Order.  Specifically, it cites to this Court's statements that "the Debtor assumed all liability for *all* claims," that "BIW was relieved of all liability of the Congoleum Flooring Business," and that the policies were sold "free and clear and subject to a release of all past, present and future claims." *2021 Summary Judgment Opinion*11, 16, 21, ECF No. 71 in Adv. Pro. No. 20-01439 (emphasis in original).  Upon review, this Court recognizes that its Opinion could have been worded more articulately in certain parts.  However, Occidental's argument places far too much focus on a few select phrases and disregards the overall message of the Opinion.  It is clear based on the entirety of the Opinion and the accompanying 2010 Summary Judgment Order that this Court concluded that the Finding of Fact "was a finding that BIW was not a successor to the Congoleum Flooring Business" and, thus, "has no responsibility for any of the liabilities of the Congoleum Flooring Business." *2021 Summary Judgment Order* 2, ECF No. 68 in Adv. Pro. No.

20-01439; *see also 2021 Summary Judgment Opinion* 21, ECF No. 71 in Adv. Pro. No. 20-01439

(concluding that "Paragraph 104 of the 2010 Confirmation Order further memorializes that BIW

has no liability for any claims—asbestos and non-asbestos—stemming from the Congoleum

Flooring Business."). This Court's inartful wording at a few points does not alter this conclusion,

nor render the Court's ruling unclear or difficult to understand.

Moreover, the Court clarifies now that, in its statement that the sale of the policies was

"free and clear and subject to a *release* of all past, present and future claims," the term "release"

relates to what was being provided to *Century*—not BIW. *2021 Summary Judgment Opinion* 21,

ECF No. 71 in Adv. Pro. No. 20-01439 (emphasis added). Indeed, Century had an obligation to

provide coverage to the Debtor and other additional insureds. In exchange for buying back the

policies, Century received a release of such obligations. BIW, however, was under no obligation

to indemnify, provide coverage to, or perform any other obligation to or for the Debtor. There

would be no purpose served by "releasing" BIW.

In sum, Occidental's recharacterization of the liability determination in the Finding as a

"release" ignores the larger picture and the weight of the evidence. In its simplest form, what was

being sought by way of the Century Settlement was certainty as to who was responsible for claims

related to the flooring business. The Century Settlement provided certainty to Century—in that

they received the § 105(a) anti-suit injunction preventing anyone from seeking coverage or making

claims related to the flooring business—and to the additional insureds like BIW—in that they

received a finding that they were *not* liable for claims stemming from the flooring business. That

finding—memorialized in Paragraph 104—ensured that no entity could sue BIW for claims

relating to the flooring business for which Century, its insurer, had been released of coverage obligations.  Of course, this is precisely what Occidental seeks to accomplish by way of the Occidental Lawsuit.

Finally, the Court acknowledges Occidental's position that—to the extent the Finding constituted "adequate protection" for the coverage surrendered by way of the Century Settlement—this type of protection cannot come at the expense of third-parties' rights. *See Occidental's Supplemental Submission* 24, ¶ 40, ECF No. 8410.  To the extent this section of Occidental's brief is meant to present a due process argument, this Court already has addressed and disposed of these arguments.  To the extent this section challenges Judge Ferguson's decision to approve the Century Settlement and the proposed Finding, or the Judge Pisano's decision to incorporate the Finding into the 2010 Confirmation Order, it is inappropriate for this Court to pass judgment on those rulings.  Likewise, it is not appropriate for Occidental to collaterally attack those decisions by way of its opposition to the instant Motion.

## 2.    Motion Seeks to Enforce the 2010 Confirmation Order

Occidental contends that the Motion is futile because it seeks to "enforce" a finding of fact. In Occidental's view, the Finding "does not command any party to do or refrain from doing anything." *Occidental Supplemental Submission* 26, ¶ 44, ECF No. 8410.  Thus, it asserts that there is "nothing to *enforce* here." *Occidental's Opposition* 24, ¶ 31, ECF No. 8398.  Occidental's position ignores the fact that the Finding was incorporated into the 2010 Confirmation Order and confirmed along with all other Plan terms and exhibits. *See, e.g.*, *2010 Confirmation Order* Part III(A)(¶1), ECF No. 664 in Case No. 09-cv-04371 (JAP) ("The Plan . . and separate findings of

43

fact and conclusions of law, are CONFIRMED in each and every respect pursuant to §§ 1129 and

524(g) of the Bankruptcy Code."). The 2010 Confirmation Order specifies that

> the terms of the Plan and this Confirmation Order shall be binding upon all Persons
> . . . any and all holders of Claims, Demands or Interests (irrespective of whether
> such Claims or Interests are impaired under the Plan or whether the holders of such
> Claims or Interests accepted, rejected or are deemed to have accepted or rejected
> the Plan) . . . and any and all Persons who are parties to or are subject to the
> settlements compromises, releases, waivers, discharges and injunctions described
> herein, and in the Findings and Conclusions or in the Plan.

*Id.* at ¶ 4. The 2010 Confirmation Order is binding on Occidental. Thus, the instant Motion does

not seek to "enforce" the Finding of Fact, but rather to interpret and enforce the 2010 Confirmation

Order. As such relief falls well within the province of this Court, BIW's request is not futile in

this respect.

### 3. No CERCLA violation

Occidental contends that BIW's suggested reading of the 2010 Confirmation Order violates

CERCLA and is inconsistent with the Plan. *See Occidental's Opposition* 35, ¶ 54-57, ECF No.

8398. Occidental did not place much emphasis on this argument during the hearing on the Motion

and did not elaborate upon it in its supplemental submission. Nevertheless, the Court will address

it here.

Occidental's argument is premised on a Plan provision that states: "[n]othing in the

Confirmation Order or Plan shall be construed as releasing or relieving any Entity of any liability

under any Environmental Law [including CERCLA]." *Fourth Amended Joint Plan of

Reorganization* 45, § 11.2, ECF No. 664-1 in Case No. 09-cv-04371 (JAP). Moreover, Occidental

contends that CERCLA, itself, precludes parties from contracting away liability. This Court

already has determined that the Finding of Fact at issue was not a mere contractual term of the

Century Settlement.  Instead, it was an affirmative determination regarding the Debtor's liability

made by the bankruptcy court.  The district court further memorialized that liability determination

in Paragraph 104 of the 2010 Confirmation Order.  BIW was not "released" or "relieved" of any

liability—the bankruptcy court determined that *it had none*.  Accordingly, nothing about BIW's

suggested reading of Paragraph 104 is violative of either CERCLA or the Plan.

### F.  Application of Legal Principles

The Court now turns to the legal theories BIW advances in its Motion to support its

requested relief: Res Judicata and Collateral Estoppel.

### 1.  Res Judicata Precludes Re-litigation of the Finding of Fact

As set forth above, "the provisions of a confirmed plan bind the debtor . . . and any creditor

. . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether

or not such creditor . . . has accepted the plan." 11 U.S.C. § 1141(a).  Thus, "[a] confirmation order

judgment is like any other judgment, it is res judicata, and it bars all challenges to the plan that

could have been raised during the bankruptcy proceeding." *In re RTI Holding Co., LLC*, No. 20-

12456, 2021 WL 4994414, at *6 (Bankr. D. Del. Oct. 27, 2021) (citing *In re Arctic Glacier Int'l,

Inc.*, 901 F.3d 162 (3d Cir. 2018), as amended (Oct. 24, 2018)).  Consequently, parties may be

precluded from raising claims or issues that they could have or should have raised before

confirmation of a bankruptcy plan, even though they failed to do so. *Turshen v. Chapman*, 823

F.2d 836, 839 (4th Cir. 1987) ("The normal rules of res judicata and collateral estoppel apply to

the decisions of bankruptcy courts.") (citation omitted); *see also Heritage Hotel Ltd. Partnership*

*I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993) (listing cases), aff'd, 59 F.3d 175, 1995 WL 369528 (9th Cir. 1995). A bankruptcy court's order of confirmation is treated as a final judgment with res judicata effect. *In re G–I Holdings, Inc.*, 514 B.R. 720, 747–48 (Bankr. D.N.J. 2014) aff'd, 654 F. App'x 571 (3d Cir. 2016) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S. Ct. 134, 83 L.Ed. 104 (1938); *Travelers lndem. Co. v. Bailey*, 557 U.S. 137, 138–39, 129 S. Ct. 2195, 174 L.Ed.2d 99 (2009) (holding that once an order becomes final, it is res judicata as to parties and those in privity with them)).

"The doctrine of claim preclusion [or res judicata] is central to the purpose for which civil courts have been established, the conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions." *Gage v. Warren Tp. Committee & Planning Bd. Members,* 463 F. App'x 68, 72 (3d Cir. 2012); *see also Kenny v. Schrading,* No. 20-cv-15786, 2021 WL 5495898, at *2 (D.N.J. Nov. 23, 2021) (citing *Edmundson v. Borough of Kennett Square*, 4 F.3d 186, 189 (3d Cir. 1993) and explaining that claim preclusion is often referred to as res judicata)). The doctrine bars not only claims that were brought in a previous action, but also claims that could have been brought. *Post v. Hartford Ins. Co.,* 501 F.3d 154, 169 (3d Cir. 2007). The doctrine of res judicata or claim preclusion attaches where there has been: (1) a final judgment on the merits in a previous lawsuit involving; (2) the same parties or their privies; and (3) a subsequent action based on the same cause of action. *Mullarkey v. Tamboer*, 536 F.3d 215*,* 225 (3d Cir. 2008); *In re RTI Holding Co., LLC*, 2021 WL 4994414, at *7 (quoting

*Bd. Of Trustees of Trucking Employees of N.J. Welfare Fund, Inc.-Pension Fund v. Centra*, 983
F.2d 495, 504 (3d Cir. 1992)).  Here, all three elements are present.

First, the 2010 Confirmation Order is undeniably a final judgment decided on the merits.
*See, e.g.*, *In re RTI Holding Co.*, LLC, 2021 WL 4994414, at *6 ("When a bankruptcy court enters
a confirmation order, it renders a final judgment."); *see also In re Arctic Glacier Int'l, Inc.*, 901
F.3d at 166 (citing 8 COLLIER ON BANKRUPTCY ¶ 1141.01[4], at 1141–11 (Richard Levin & Henry
J. Sommer eds., 16th Ed. 2017)).  Second, as set forth above, Occidental received notice and was
a party to the confirmation proceedings.  Accordingly, the both the confirmation proceedings and
the Occidental Lawsuit involve the same parties.  Third and finally, the Finding of Fact in
Paragraph 104 incorporated into the 2010 Confirmation Order was a determination as to BIW's
liability for claims stemming from the Congoleum Flooring Business.  The Occidental Lawsuit
similarly seeks to establish BIW's liability for claims stemming from the Congoleum Flooring
Business.  Thus, the subsequent suit—the Occidental Lawsuit—is based on the same cause of
action. *See In re Target Indus., Inc.*, 328 B.R. 99, 116 (Bankr. D.N.J. 2005) (quoting *Eastern
Minerals & Chemicals Co. v. Mahan*, 225 F.3d 330, 337–38 (3d Cir. 2000) and explaining that res
judicata barred a cause of action that could have reasonably been raised at confirmation).  To the
extent Occidental disputed the Finding regarding BIW's liability, it could have—and should
have—challenged that finding at the time of confirmation.

47

### 2.   Collateral Estoppel Precludes Relitigation of the Finding of Fact

Collateral estoppel, or issue preclusion, "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 2171, 171 L. Ed. 2d 155 (2008) (internal quotation marks omitted).  In order for collateral estoppel to apply, the following four elements must be satisfied: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action*." Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 602 F.3d 237, 247–48 (3d Cir. 2010) (quoting *Szehinskyj v. Att'y Gen*., 432 F.3d 253, 255 (3d Cir. 2005)).  Collateral estoppel will also apply to a person who is not a formal party, to the extent such person also had "the opportunity to present proofs and argument" in the previous litigation. *Taylor*, 553 U.S. at 895 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 39, cmt. a (AM. L. INST. 1980)).

Application of collateral estoppel likewise bars Occidental's claims against BIW in the Occidental Lawsuit.  First, the issue sought to be precluded—BIW's liability for the environmental claims stemming from the Congoleum Flooring Business—is the same issue presented in the Century Sale Motion.  Second, the Finding of Fact incorporated into Paragraph 104 of the 2010 Confirmation Order "was actually litigated." *2021 Summary Judgment Order* 2, ECF No. 68 in Adv. Pro No. 20-01439.  As discussed, several excess insurers objected to the Century Sale Motion and, after considering the evidence in the record and the parties' arguments, Judge Ferguson ruled in favor of the Debtor.  Third, this finding was memorialized in Paragraph 104 of the 2010

Confirmation Order and accordingly constituted a final and valid judgment. It is palpably clear to the Court that such finding was essential to the confirmation of the First Congoleum Bankruptcy case.  Throughout the bankruptcy, multiple parties testified that the insurers would not agree to the settlement without the certainty of the § 105(a) anti-suit injunction and the inclusion of the Finding of Fact. *See, e.g.*, *Application in Support of Century Sale Motion* ¶ 52, Case No. 03-51524, ECF No. 4439-1; *Declaration of Howard N. Feist, III* ¶ 72, Case No. 09-cv-04371 (JAP), ECF No. 625; *Transcript of Hearing on Century Sale Motion* 53:11-12, ECF No. 4568 (Sept. 11, 2006) ("[Century] wanted a complete policy buy back of all their liabilities . . . ").  As this Court has ruled previously, the Finding "was necessary to the approval of the Century Sale Agreement and to the 2010 Confirmation Order and ultimately to Congoleum's emergence from its First Bankruptcy Case." *2021 Summary Judgment Order* 2, ECF No. 68 in Adv. Pro No. 20-01439.  In sum, Occidental is collaterally estopped from relitigating the Finding of Fact in the Occidental Lawsuit.

### G.  Equitable Mootness

Equitable mootness is a narrow doctrine that is usually applied in the context of an appeal. It allows an appellate court to dismiss an appeal when granting the requested relief would undermine the finality and reliability of a consummated plan of reorganization. *See In re Trib. Media Co.*, 799 F.3d 272, 277 (3d Cir. 2015); *In re Semcrude, L.P.*, 728 F.3d 314, 317 (3d Cir. 2013) (holding that appeal may be dismissed as equitably moot if granting the requested relief would disrupt the effected plan or harm third parties).  The Third Circuit has "described the analytical steps under the doctrine as asking: '(1) whether a confirmed plan has been substantially

consummated; and (2) if so, whether granting the relief requested in the appeal will (a) fatally scramble the plan and/or (b) significantly harm third parties who have justifiably relied on plan confirmation.' " *In re Nuverra Env't Sols., Inc.*, 834 F. App'x 729, 733 (3d Cir.), as amended (Feb. 2, 2021) (quoting *In re Trib. Media Co.*, 799 F.3d at 278 (citing *In re SemCrude, L.P.*, 728 F.3d at 321)).

Admittedly, the Court is not faced with an appeal. However, Occidental's opposition to BIW's motion is effectively a collateral attack on both the Century Sale Order and the 2010 Confirmation Order. The principles underlying equitable mootness likewise apply to Occidental's collateral attack on these long-standing orders. *See, e.g.*, *In re TLFO, LLC*, 572 B.R. 391, 434 (Bankr. S.D. Fla. 2016) (stating that the doctrine of equitable mootness "is equally applicable to motions to reconsider or overturn final orders in bankruptcy proceedings"); *In re Machne Menachem, Inc.*, 371 B.R. 63, 74 (Bankr. M.D. Pa. 2006) ("The concept of equitable mootness has been applied to matters other than appeals when the subject matter has been confirmation of a plan of reorganization." (citing *Almeroth v. Innovative Clinical Solutions, Ltd.* (*In re Innovative Clinical Solutions, Ltd.*, 302 B.R. 136, 140–41 (Bankr. D. Del. 2003)); *see also In re Arcapita Bank B.S.C.(c)*, No. 13-cv-5755, 2014 WL 46552, at *5 (S.D.N.Y. Jan. 6, 2014) (collecting cases describing contexts other than appeal of confirmation order in which equitable mootness is applicable). Here, equitable mootness may serve to bar this or any court from revisiting the scope, applicability, and enforcement of the Finding of Fact in Paragraph 104, notwithstanding questions raised as to proper notice.

There is no question that the Plan in this case has been substantially consummated.  Indeed, the Debtor filed for a *second* bankruptcy in 2020 and sold substantially all of its assets by means of a § 363 sale.  Granting Occidental the relief it seeks—by denying BIW its requested relief—would significantly harm BIW which justifiably relied on the protections included in the Century Sale Order and the 2010 Confirmation Order.  BIW surrendered valuable rights to insurance coverage and in doing so, BIW obtained "certainty" that it would not suffer negative consequences of that lost coverage in the form of the Finding of Fact in Paragraph 104.  The import of this Finding is reflected in the fact that consummation of the Century Settlement was conditioned upon its incorporation into the Plan itself.  Without this Finding—and the certainty that came with it—BIW would have objected to the Century Settlement, which stripped it of significant rights.  It would be inequitable to place BIW at risk at this late stage by permitting a collateral attack on a decade-old confirmation order.  While this Court could arguably rule in favor of Occidental without fatally scrambling the Plan, doing so would significantly harm third parties who have justifiably relied on the Plan.  The potential harm to additional insureds like BIW—weigh in favor of dismissal of Occidental's arguments on grounds of equitable mootness—adequate notice or not.  *See, e.g.*, *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180, 187 (3d Cir. 2001) (characterizing debtor's failure to provide revised plan and notice of plan confirmation to shareholders as "suspicious" but nevertheless affirming district court's application of equitable mootness doctrine in dismissing shareholders' appeal).

## IV.    Conclusion

For the reasons discussed, the Court determines that reopening is warranted to interpret and enforce the 2010 Confirmation Order and the Finding of Fact therein.  The Court is guided by the plethora of case law establishing that § 350(b) provides bankruptcy courts with broad discretion to reopen administered cases. *See, e.g.*, *In re Lazy Days RV Ctr. Inc*, 724 F.3d 418, 422-23 (3d Cir. 2013).  This Court has the authority, if not the obligation, to interpret its orders when a dispute arises, even if the dispute has no direct bearing on the bankruptcy estate.  Although Occidental attempts to distinguish the circumstances of the instant case from those cited by BIW in favor of reopening, much of Occidental's argument relies on its allegations of insufficient notice and its mischaracterization of the Finding as a release.  The Court has rejected these arguments; as a consequence, Occidental's argument against reopening is unpersuasive.  The factual record and procedural history of this case clearly establish that it is appropriate for this Court to reopen the First Congoleum Bankruptcy for the limited purpose of interpreting and enforcing the 2010 Confirmation Order. *In re LandSource Communities Dev., LLC*, 612 B.R. 484, 493 (D. Del.), aff'd *sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747 (3d Cir. 2020).

Accordingly, the Court, in granting limited declaratory relief, rules that the Finding of Fact set forth in Paragraph 104 of the 2010 Confirmation Order, is binding and enforceable against Occidental and bars the relief currently sought in the Occidental lawsuit. Movant is directed to submit a proposed form of order consistent with this Opinion within ten (10) days.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: January 7, 2021